STATE OF CONNECTICUT *v.* HERBERT DOLPHIN
(11793)

PETERS, C. J., HEALEY, PARSKEY, DANNEHY and SANTANIELLO, Js.

Argued November 15, 1984—decision released March 12, 1985

*Edward F. Hennessey,* special public defender, for the appellant (defendant).

*Susann E. Gill,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Thomas P. Miano* and *John M. Massameno,* assistant state's attorneys, for the appellee (state).

DANNEHY, J. The defendant was found guilty by a jury on an amended information charging him with the crime of robbery in the first degree in that in the course of the commission of the crime or of immediate flight therefrom, he or another participant displayed or threatened the use of what he represented by his words or conduct to be a pistol, revolver or other firearm in violation of § 53a-134 (a) (4) of the General Statutes.[1] The evidence against the defendant consisted primarily of an accomplice's testimony. The accomplice named the defendant as his partner in the crime and testified in detail as to the robbery in question.

On appeal, the defendant argues nineteen specific assignments of error. He claims that the trial judge erred in: (1) admitting as substantive evidence of identification the hearsay testimony of a police officer that a nonhostile state's witness, who testified to the con-

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. . . ."

trary, had in fact made a positive pretrial identification of the accused after viewing a photographic array, (2) refusing to require the state to produce or to admit the existence of a prior inconsistent statement made to the state by a key state's witness, (3) permitting the state to impeach a defense witness through cross-examination concerning various acts of possible misconduct, (4) denying his motions for a mistrial and to dismiss because of the actions of the state in suggesting to the jury that the accused was incarcerated, (5) denying his motion for a mistrial by reason of the state's nondisclosure of fingerprint evidence, specifically requested by the defendant over one year prior to trial, (6) refusing to admit the state's pleading alleging that a readable palm print had been discovered in an area of the bank counter, which the defendant was claimed to have vaulted, (7) denying his motion for mistrial because of the state's action in suggesting to the jury that unreadable fingerprints could have belonged to the accused, (8) refusing to charge the jury, as requested, on the probative value of a readable palm print, not belonging to the defendant, in the area of the crime, (9) refusing to charge the jury, as requested, on the probative value of the police failure to find any prints of the accused at the crime scene, (10) refusing to charge the jury, as requested, that the defendant could be found guilty of lesser included offenses, (11) refusing to charge the jury, as requested, on the affirmative defense of inoperability of the gun used in the commission of the crime, (12) charging the jury that the commission of the crime charged was not in dispute, (13) charging the jury that it was the defendant's choice to testify or not, (14) charging the jury to consider, in the course of their deliberations over the guilt or innocence of the accused, that laws are made to protect society, (15) refusing to charge the jury, as requested, on the scrutiny it should give to testimony of an accomplice, (16) placing undue emphasis on por-

tions of the evidence consistent with the state's version of the case, (17) denying the defendant's motion for entry of judgment of acquittal, (18) refusing to grant the defendant a full *Franks* v. *Delaware* hearing on the issue of false statements in the affidavit in support of the warrant, and (19) denying the defendant's pretrial motion to dismiss on the basis of the insufficiency of the affidavit in support of the warrant for the reason that the inculpatory statement of a co-accused is in itself insufficient to support a finding of probable cause to arrest.

We hold that there was error, but that the error was harmless rather than prejudicial. Accordingly, we affirm. Only the relevant facts follow.

The robbery occurred about 10:30 a.m. on May 27, 1981, when two men, a black and an Hispanic, entered a bank on Blue Hills Avenue in Hartford and at gunpoint took $2850 from cash drawers. Teddy Casciano, an Hispanic, was charged with the defendant, a black, for the same crime; Casciano pleaded guilty to the charge and is not involved in this appeal.

The defendant does not dispute the fact that an armed robbery was committed. Rather, he contends he was not a participant. His defense was predicated upon his contention that Casciano was a member of a gang known as the Savage Nomads whose members take an oath of loyalty, and that Casciano had falsely implicated the defendant to protect a Savage Nomad. Dennis Cammerer testified in support of this defense.

Casciano testified that on May 27, 1981, the defendant and he robbed the bank. The pair traveled to the bank in a rented automobile which the defendant drove. Casciano had the gun, a loaded .22 caliber automatic with a 10-1/2 inch barrel. He had fired it two days earlier. They entered the bank and the defendant asked the teller for penny wrappers. Casciano pulled the gun

and announced a robbery. The defendant then vaulted the tellers' counter, took the money and revaulted the counter. The defendant ran from the bank; Casciano backed out. From the time he pulled out the gun until he backed out of the bank less than a minute elapsed. The defendant drove the car away. Before they abandoned the car, the defendant removed his outer shirt. When they arrived at the apartment on the street where Casciano lived in Hartford, they divided the money equally. Casciano's sister Ann was there. Casciano gave his share to his sister, who hid it. Casciano hid the gun. The defendant and Casciano separated. They did not see each other again until the time of trial. In the meantime, Casciano had pleaded guilty to the charge and had been sentenced to imprisonment for five to ten years.

Two occurrence witnesses, both bank employees, testified. Their description of the crime matched the testimony of Casciano in every significant detail.

We shall first consider the propriety of the trial court's ruling refusing to charge, as requested, on lesser included offenses, or alternatively on the affirmative defense that the weapon used was not a weapon from which a shot could be discharged.

Our rule is that a defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is suffi-

ciently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser. *State* v. *Whistnant,* 179 Conn. 576, 588, 427 A.2d 414 (1980).

An essential element of the crime of robbery in the first degree as defined by § 53a-134 (a) (4) is the display or threatened use of what is represented by words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. While the ability of a person actually to do what is threatened is not an essential element of the offense, the nonoperability of a weapon is an affirmative defense in any prosecution under subdivision (a) (4). There was no evidence at the trial which could be said to raise the affirmative defense. The defendant steadfastly maintained that he was not present at the scene. He claimed to be unaware of the robbery. Yet, according to the defendant, if an inoperable gun was displayed, the crime charged would not have been established, although a crime of robbery in a lesser degree could have been found. As an abstract theory this contention might be true. As it relates to the evidence presented in this case and revealed by the record, however, it ignores the essential element of subsection (a) (4) which is the *representation* by a defendant that he has a firearm. Under this portion of § 53a-134 (a) (4) a defendant need not have an operable firearm; in fact, he need not even have a gun. *State* v. *Hawthorne,* 175 Conn. 569, 573, 402 A.2d 759 (1978). The evidence in this respect was indivisible. Either the evidence showed a representation by words or conduct that a person was armed or it showed no representation at all. Under the circumstances, the alternate request to charge on operability was properly refused.

The defendant's remaining position, that § 53a-134 (a) (4) impermissibly shifts the burden of proof on the issue of operability to the defendant, is in direct oppo-

sition to the holding of this court in *State* v. *Hawthorne,* supra, in which this argument was effectively eliminated. The defendant's suggestion that this court reconsider the holding in *State* v. *Hawthorne* goes best unheeded.

The defendant's other objections to the charge merit scant comment. For instance, none of the witnesses, on direct or cross-examination, testified that there had not been a robbery. Since the evidence of the robbery was, in fact, uncontradicted, there was no violation of the defendant's right to due process because of the judge's remarks that "[i]t seems to me that in discussing this case that there doesn't seem to be any quarrel that a robbery was committed. Again, it's your recollection that counts and whether all the elements were proven. . . ."[2]

The jury was also instructed that the defendant could remain passive, and further, "that no unfavorable inferences may be drawn by you from the accused [sic] failure to testify." Although the trial judge went beyond the mandate of General Statutes § 54-84 (b) by injecting into the instruction the additional observation that "[u]nder our law an accused may either testify or not, as he sees fit" we find that any prejudice to the defendant by that remark was eliminated when the jury was

---

[2] The relevant portion of the charge was as follows: "It seems to me that in discussing this case that there doesn't seem to be any quarrel that a robbery was committed. Again, it's your recollection that counts and whether all the elements were proven, but that doesn't seem to be the issue in the case, at least to me. The issue is whether or not this defendant was a participant in that robbery. You will recall the testimony of the witnesses from the bank, that a robbery was committed, and, obviously, that is, someone came in, took some money and, again, you don't have to prove how much money, so long as there was a theft of money, and that there was a gun pointed, and that from that you can reasonably infer that somebody was attempting to steal the money and doing so by the threat of force. Again, it's your recollection that counts and whether or not all the elements of the crime of robbery have been committed, but it seems to me that what the issue really is is who was the other participant."

categorically instructed that no unfavorable inferences could be drawn by the jury from the defendant's failure to testify. See *State* v. *Tatem,* 194 Conn. 594, 483 A.2d 1087 (1984).

The defendant's claim that a statement in the judge's charge that "the law is made to protect society" was improper teeters on the trivial. The defendant acknowledges, as indeed he must, that "[t]his charge has been repeatedly upheld by this court" and then merely refers, with obvious regret, to the argument rejected in *State* v. *Jonas,* 169 Conn. 566, 578, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976). Nevertheless, he invites us to reconsider the Connecticut law, especially the case of *Jonas.* We are unable to accept the invitation. We see no occasion to say more than that the trial judge clearly instructed the jury correctly.

We have repeatedly said that a charge must be construed as a whole and that, in consequence, isolated misstatements or omissions do not necessarily constitute reversible error. See *State* v. *Reid,* 193 Conn. 646, 480 A.2d 463 (1984); *State* v. *Corchado,* 188 Conn. 653, 453 A.2d 427 (1982); *State* v. *Williams,* 182 Conn. 262, 438 A.2d 80 (1980). None of the remaining portions of the charge isolated by the defendant fails this test. Neither the defendant nor the state was singled out for special treatment; and the jury was instructed to consider each legally recognized defense which had any foundation in the evidence. Of course, the judge was not required to give any instruction in the language of the requests and an examination of the charge shows that there was no error in dealing with the matters of the defendant's requests. The portions of the charge to the jury singled out for review are not beset by prejudicial error.

The circumstances giving rise to the defendant's several motions for mistrial were as follows. After the jury

had been selected and trial had commenced the defendant moved for a mistrial on the ground that there was a failure on the part of the state to make proper disclosure of fingerprint evidence. The motion was denied without prejudice.[3] During cross-examination of the defendant's principal witness, the state's attorney alluded to his incarceration. Defense counsel objected and moved for a mistrial. The trial judge denied the motion, finding that the remark had been inadvertently made, and promptly instructed the jury to disregard "the last colloquy" between the witness and the state's attorney. The next motion for a mistrial came after the assistant state's attorney asked a fingerprint expert if an unreadable print could be the defendant's print. Before the witness could answer, defense counsel objected. The trial judge sustained the objection, but only as to the form of the question; and intervened to inquire if the witness could determine whose print it was. When the witness responded that he could not, the trial judge denied the motion.

While a state's attorney has an obligation to present the state's strongest case, he is not licensed to use unethical or inflammatory tactics. As an officer of the court, he has a duty to see that justice is administered in conformity with recognized principles of law. He must carefully avoid improprieties tending to prejudice any constitutional right of the accused. See *State* v. *Couture*, 194 Conn. 530, 482 A.2d 300 (1984); *State* v. *Ubaldi*, 190 Conn. 559, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983).

Merely asking an improper question, however, does not necessarily mandate a mistrial. The decision

---

[3] The court did order that the evidence sought by the defendant be released and stated that it would entertain the defendant's motion for a mistrial at a later date if the defendant was prejudiced by the delay in receiving the evidence. The defendant never renewed his motion for a mistrial on this issue.

whether to grant a mistrial turns on whether an event has occurred that is so prejudicial to the defendant that he cannot have a fair trial. *State* v. *Ubaldi,* supra, 562. The rule in this state is that a motion for mistrial should be granted as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it the accused cannot have a fair trial. *State* v. *Hawthorne,* 176 Conn. 367, 372, 407 A.2d 1001 (1978). Furthermore, the trial court has a wide discretion in ruling on motions for mistrial. Id. "The defendant must prove to the court that the remarks made by the prosecutor were so prejudicial that the defendant was deprived of the opportunity for a fair trial and the entire proceedings were tainted." Id., 372.

The trial judge promptly intervened to cure any prejudicial impact on the jury, and concluded that under all of the circumstances the questions of the assistant state's attorney did not warrant such an extreme remedy as a mistrial. There is nothing in the record to indicate that the trial court was wrong in its conclusion, or that those questions in any way contributed to the verdict. We hold that the court did not abuse its discretion in denying the defendant's motions for mistrial.

During trial the judge denied the defendant's motion to suppress photographic identification and anticipated in-court identification of the defendant. Following is a summary of the facts, amplified by some details from the lengthy hearings in the absence of the jury, as they relate to the photographic identification of the defendant by Madison Bolden, a detective with the Hartford police department, who investigated the bank robbery.

Carolyn Brown was employed by the bank as a secretary-receptionist on the day of the robbery. She was seated at her desk when she heard something. She looked up and saw an Hispanic man with a gun. Then she saw a black man jump over the counter at the

tellers' station. She did not see the black man very well because her attention was riveted on the man with the gun. The police showed her photographs. She neither recalled selecting a photograph of the man who vaulted the counter nor affixing her signature on the back of it. She did remember picking out a photograph of the man with the gun and signing it. She could not remember any events involving the identification of the defendant. She acknowledged her signature on the back of the defendant's photograph and wondered how it got there. Over strenuous objection the photograph was admitted into evidence.

Madison Bolden is a detective with the Hartford police department. He testified that he showed photographs of Hispanics and blacks to Brown. She looked at the photographs, identified Casciano and signed the back of his photograph. He also showed her another array of photographs and she pointed to the defendant, made a positive identification and signed on the back of the defendant's photograph.

The defendant argues that the trial court erred in allowing the state to introduce hearsay testimony of Bolden as to what Brown did by way of identifying the defendant. We agree. Bolden's statement was hearsay and the defendant's objection should have been sustained. We find, however, that the statement was merely cumulative of the other identification testimony and was not prejudicial to the defendant. In the course of the trial, Casciano, his sister Ann, and his brother's friend Cynthia Dryburgh all identified the defendant as the man in the bank surveillance film. Their testimony was positive and, if the jury found the testimony credible, it alone was sufficient to identify the defendant. Therefore, Bolden's testimony about Brown's identification did not inject new evidence into the trial; it merely repeated the identification of the defendant by the other witnesses. In discussing error assigned to the

admission of evidence, we have said: "An erroneous ruling should not be considered reversible error if the evidence admitted thereby has already properly entered the case." (Citations omitted.) *State* v. *Randolph,* 190 Conn. 576, 589-90, 462 A.2d 1011 (1983). Although we will not permit a conviction procured by the admission of incompetent evidence to stand, a judgment will not be reversed for the admission of incompetent evidence which was harmless. *State* v. *Randolph,* supra.

On September 29, 1981, the defendant filed what may be accurately described as a catch-all discovery motion that the state answered on September 30, 1982. It appears from the briefs of counsel that during trial the court apparently refused to order disclosure of any contradictory statements Casciano made concerning the gun used in the robbery.

Particular emphasis is placed upon *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In that case the Supreme Court stated: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id., 87. It is the duty of the state voluntarily to disclose material in its exclusive possession which would be exonerative or helpful to the defense, which the state would not affirmatively use to prove guilt and which it should not conceal. *Giles* v. *Maryland,* 386 U.S. 66, 101-102, 87 S. Ct. 793, 17 L. Ed. 2d 737 (1967) (Fortas, J., concurring). No such issue is involved in this case. There is no suggestion that any evidence was suppressed. In fact, it appears that the alleged contradictory statement surfaced in a pretrial discussion between Casciano and defense counsel. Thus, defense counsel was fully aware of the evidence before trial, and had equal access to it. Evidence known to the defendant or his counsel, or that

is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady. State* v. *Altrui,* 188 Conn. 161, 177, 448 A.2d 837 (1982); *State* v. *Perez,* 181 Conn. 299, 309, 435 A.2d 334 (1980); *State* v. *Grasso,* 172 Conn. 298, 303, 374 A.2d 239 (1977).

Prior to trial, the defendant filed an amended motion to dismiss with a supporting affidavit signed by defense counsel. The defendant requested a *Franks* hearing; *Franks* v. *Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); alleging that the arrest warrant and supporting affidavit contained false statements by two bank employees and that, stripped of the allegedly false statements, the warrant was insufficient to support a finding of probable cause. Specifically, in the construction most favorable to the defendant, he claims that the testimony of Joyce Toomer and Carolyn Brown, the two bank employees, wholly contradicted a statement which was contained in the affidavit and which was requisite to a finding by the magistrate of probable cause for the issuance of an arrest warrant. Furthermore, the defendant contends that the inclusion of this statement in the affidavit required a hearing on the issue of whether the arrest warrant affidavit showed an intentional or reckless disregard for the truth.

The United States Supreme Court in *Franks* v. *Delaware* held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." Id., 155–56.

At the outset, it should be noted that notwithstanding the remedy afforded a defendant by *Franks,* for

the numerous reasons set out therein including the avoidance of fishing expeditions and undue additional congestion of the criminal dockets, the Supreme Court reaffirmed the longstanding rule that there is an underlying presumption of validity with respect to the affidavit supporting a warrant. Id., 165–71. Consequently, *Franks* type hearings are mandated only when a defendant makes a "substantial preliminary showing of deliberate or reckless falsehood by the affiant and of the materiality of the falsehood to the warrant." The Supreme Court further suggested that the requisite offer of proof take the form of affidavits or other reliable statements of witnesses. Id., 171.

The defendant contends that the statement in the warrant application that both bank employees identified a photograph of the defendant is so discrepant with the testimony of these witnesses at the hearing on the motion to dismiss that an inference arises that the affiant intentionally or recklessly misled the magistrate. We do not agree.

Charles Morris, a detective with the Hartford police department, who, along with Bolden, was assigned to investigate the robbery and signed the warrant affidavit, testified that he and Bolden showed photographs of Hispanic males and photographs of black males to Toomer and Brown. When Toomer and Brown examined the photographs they were not together. Each of the women picked out the defendant's picture and signed the back of the defendant's picture.

Toomer testified that she looked at pictures of Hispanic and black males. She further testified that she signed the back of the photograph that she thought depicted the defendant.

Brown testified that she looked at the photographs brought by Morris and Bolden and that she selected a photograph from the Hispanic array, felt sure he was

the one with the gun and signed the back of it. She stated that she could not recall having recognized one photograph as being that of the defendant. She did identify her signature on the back of his photograph. She said that the robbery had been a terrifying experience and in order to deal with it she blotted much of it out. In response to a question by the court, the witness indicated that she was not denying her identification of the defendant's photograph, but was simply saying she did not recall having selected the defendant's photograph.

While recognizing the need to ensure the constitutional protections of the accused and to safeguard the integrity of the warrant process, the *Franks* court purposefully limited subfacial review of warrants to those situations where the defendant makes a *substantial* showing of a *false* statement *intentionally* and/or *recklessly* made by the *affiant*. We have examined the record and transcript of the testimony and can conclude only that the defendant failed to meet even the most basic preliminary requirements for a *Franks* hearing. He presented no evidence of deliberate falsity or of reckless disregard for the truth, which is necessary to defeat the presumption of validity that attaches to a warrant affidavit. *State* v. *Durepo,* 37 Conn. Sup. 901, 901–903, 443 A.2d 493 (1982). Consequently, no further inquiry into the sufficiency of the warrant is necessary.[4]

The defendant next claims that cross-examination of a defense witness relative to his use of an alias, his having been "wanted" by the police, and his having once been erroneously reported as dead after swimming in the Connecticut River was improperly allowed.

---

[4] Even if this court were to find reason to inquire into the sufficiency of probable cause, the defendant's failure to present an adequate appellate record precludes review. *State* v. *Moye,* 177 Conn. 487, 495, 418 A.2d 870, vacated on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129 (1979).

The witness did not deny that he used an alias; and admitted that, in May, 1979, he attempted to swim across the Connecticut River and, as a result of the incident, was presumed dead. He further testified that in May, 1979, there was a warrant pending against him in Massachusetts and, one, possibly two, in Connecticut. He said that, after the reported drowning, he left the jurisdictions of Massachusetts and Connecticut and was gone until he was brought back to Connecticut from the state of Washington. On June 29, 1982, he was found guilty and sentenced on two counts of failure to appear.

We cannot say that plain error resulted from this cross-examination. The general rule is that, in attacking a witness' credibility, inquiry may be made, in the discretion of the court, as to particular acts of misconduct tending to show a lack of veracity, even though such evidence might be irrelevant to the issues in the case. *Martyn* v. *Donlin*, 151 Conn. 402, 408, 198 A.2d 700 (1964). The trial court enjoys a liberal discretion in fixing the limits of cross-examination, particularly as it affects credibility. *State* v. *Ouellette*, 190 Conn. 84, 101, 459 A.2d 1005 (1983); *State* v. *Miller*, 186 Conn. 654, 443 A.2d 906 (1982). Clearly, the evidence was relevant for a purpose other than to show the witness' propensity to commit a crime. It was relevant to his veracity. There was no abuse of discretion in its admission.

The trial opened on the defendant's motion to dismiss and closed with his motions to set aside the verdict and for judgment of acquittal, all based on the insufficiency of the evidence. Each motion was denied. We agree.

If believed by the jury, the evidence against the defendant was overwhelming. The defendant had been living with Casciano, his sister Ann, and a few other

people for approximately one month prior to the robbery. In addition to Casciano's detailed account of the defendant's participation in the robbery, the jury was presented with the corroborating testimony of Ann Casciano, Cynthia Dryburgh, Maria Rodriguez, the bank employees, and the police officers.

The night before the robbery, the defendant suggested to Casciano that they rob a little bank on Blue Hills Avenue. The defendant sketched a picture of the interior of the bank and the two planned their strategy. On the morning of the robbery, Ann saw her brother and the defendant leave the apartment together. They drove to the bank in a yellow Camaro which Dryburgh had rented a week earlier. After the robbery, the pair left the bank in the rented yellow Camaro which they later abandoned. They took a bus part of the way home and then someone gave them a ride to within a few blocks of their apartment. After the money was divided, the defendant left the apartment and was not seen again by either of the Cascianos until the trial. Maria Rodriguez, the defendant's girlfriend, was in the apartment during the time Casciano and the defendant left and came back and thereafter until the defendant left for good. Casciano, Ann, and Dryburgh all identified the man shown in the bank surveillance film as the defendant.

On the basis of these and the previously described facts, we are convinced that the jury could have reasonably concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt.

There is no error.

In this opinion the other judges concurred.