STATE OF CONNECTICUT *v.* LOUIS HAWTHORNE

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 13—decision released August 1, 1978

*David M. Abbamonte,* special public defender, for the appellant (defendant).

*Frank S. Maco,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Eugene J. Callahan,* assistant state's attorney, for the appellee (state).

BOGDANSKI, J. The defendant was charged in an information with the crime of robbery in the first degree, in that he or another participant in the crime displayed or threatened the use of what he represented by his words or conduct to be a firearm, in violation of § 53a-134 (a) (4) of the General Statutes. After a trial, the jury returned a verdict of guilty. From the judgment rendered thereon, the defendant has appealed, assigning error in the charge to the jury and in the overruling of his claims of law concerning the constitutionality of sub-

section (a) (4) of the statute. Because subsection (a) (4) of § 53a-134[1] was recently added to the statute in 1975,[2] the issues raised on this appeal are matters of first impression.

From the evidence the jury could have found the following facts: On the evening of July 16, 1976, a gas station attendant in Norwalk was robbed at gunpoint by two men. One man put a pistol to his neck; the other put a pistol to his chest and said, "This is a holdup." At the trial two handguns, taken from the vehicle in which the defendant was apprehended shortly after the robbery, were admitted into evidence and the victim identified them as the weapons used in the robbery. The state did not, however, offer any evidence that either of those weapons was capable of being fired.

The court thereafter charged the jury in part as follows: "1. There must be a robbery . . . . 2. During the course of the commission of the robbery . . . the perpetrator of the robbery . . . must show or threaten the use of what he represents by his words or conduct to be a firearm . . . in this case a

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime. . . ."

[2] Public Acts 1975, No. 75-411, § 1.

pistol . . . . 3. The pistol which is displayed or threatened to be used, whether loaded or unloaded, is capable of being fired. . . ." The defendant took exception to part three of the above charge.

In the course of their deliberations, the jury asked the court whether they were to consider a black pistol in evidence as operable, thus permitting them to consider robbery in the first degree. The court responded: "That black pistol has been introduced into evidence. You have a right to examine it and to test it and then, from your examination of it, from your observations, determine whether or not it is an operable weapon from which a shot can be fired."

The defendant first claims that the court erred in its charge concerning the operability of the weapon since there was no evidence introduced on this point. The defendant further contends that under subsection (a) (4) of § 53a-134, as under subsection (a) (2), the operability of the weapon used is an essential element of the crime and an issue upon which the state has the burden of proof.

In *State* v. *Rose,* 169 Conn. 683, 363 A.2d 1077, in considering the same statute, we said that under subsection (a) (2) — robbery while armed with a deadly weapon — the state has the burden of establishing that the firearm used was, in fact, a *deadly weapon,* i.e., capable of firing a shot. It should be noted, however, that the requirement of operability under subsection (a) (2) is imposed, not by the definition of robbery, nor by the robbery statute itself, but by the definition of a deadly weapon in § 53a-3 (6).[3]

---

[3] "[General Statutes] Sec. 53a-3. DEFINITIONS. . . . (6) '[D]eadly weapon' means any weapon, whether loaded or unloaded, from which a shot may be discharged . . . ."

Robbery is defined in § 53a-133 as larceny which involves the use or *threat* of immediate physical force to prevent or overcome the resistance of the victim. Robbery is an offense against the person, the distinguishing characteristic of which is the intimidation of the victim. The ability of a defendant actually to do what he has threatened, therefore, is not an essential element of this crime.

The defendant, however, argues that the legislature did nonetheless make operability an element of the crime under subsection (a) (4); that the requirement of operability is imposed by the definition of firearm in § 53a-3 (19),[4] as a weapon from which a shot may be discharged.

We do not agree. The defendant's interpretation ignores the essential element of subsection (a) (4), which is the *representation* by a defendant that he has a firearm. Under this portion of § 53a-134, a defendant need not have an operable firearm; in fact, he need not even have a gun. He need only *represent* by his words or conduct that he is so armed. Moreover, it is undisputed that the legislature could make the representation by a defendant that he had a gun an element of robbery in the first degree.

We conclude therefore that the operability of a firearm is not an essential element of robbery in the first degree under subsection (a) (4) of § 53a-134. We also recognize that this subsection, by its terms, makes the inoperability of a firearm an affirmative defense by means of which a defendant, who chooses

---

[4] "[General Statutes] Sec. 53a-3. DEFINITIONS. . . . (19) '[F]irearm' means any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged."

to avail himself of this defense, may reduce the crime from robbery in the first degree to robbery in the second degree. The court's charge to the jury, therefore, though erroneous, was more favorable to the defendant than that to which he was entitled. The defendant cannot prevail on the basis of such error. *Domenick* v. *Wilbert Burial Vault Co.*, 149 Conn. 381, 387, 180 A.2d 290.

The defendant, citing *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508, next contends that subsection (a) (4), as interpreted above, violates his constitutional right to due process in that it casts upon him the burden of disproving an essential element of the crime. We conclude, however, that the affirmative defense of inoperability provided in that subsection is an ameliorative device which operates to the benefit of the accused should he choose to avail himself of that defense.

As noted above, the operability of the weapon used is not an essential element of the crime of robbery. Under subsection (a) (4) the state retains the burden of proving that the defendant forcibly took property by displaying or threatening to use what he represented was a firearm. Not until the state has introduced evidence on all of those elements which constitute the crime of robbery in the first degree does the affirmative defense of inoperability become relevant. Only then is the accused given the privilege of establishing the true quality of the weapon, represented as lethal by the user and which only the user knew to be harmless.

Placing the burden of proof on a defendant as to a fact peculiarly within his knowledge does not deny him the benefit of the presumption of innocence. As

Mr. Justice Cardozo noted in *Morrison* v. *California,* 291 U.S. 82, 88–89, 54 S. Ct. 281, 78 L. Ed. 664: "The decisions are manifold that within the limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression." See also *Leland* v. *Oregon,* 343 U.S. 790, 72 S. Ct. 1002, 96 L. Ed. 1302.

More recently the Supreme Court of the United States in *Patterson* v. *New York,* 432 U.S. 197, 209, 97 S. Ct. 2319, 53 L. Ed. 2d 281, stated that "[t]o recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive and too inaccurate." The court noted that proof of the nonexistence of all affirmative defenses has never been constitutionally required and specifically declined to impose such a constitutional imperative upon the states. Moreover, even the dissent in *Patterson,* supra, 229, conceded the constitutionality of certain kinds of affirmative defenses. As an example of a constitutionally permissible affirmative defense Mr. Justice Powell cited New York's Penal Law § 160.15 (4) (McKinney 1975) which "subjects an armed robber to lesser punishment than he would otherwise receive if he proves by a preponderance of the evidence that the gun he used was unloaded or inoperative." Id., 229n. Connecticut's § 53a-134

(a) (4), asserted to be unconstitutional by the defendant, is modeled on and is almost identical to the New York provision cited above.

We conclude that allowing a defendant the privilege of reducing the crime with which he is charged by introducing evidence as to the condition of the weapon, a matter peculiarly within his knowledge, is not a constitutionally impermissible shifting of the burden of proof since the operability of the weapon does not pertain to any essential element of the crime of robbery in the first degree.

There is no error.

In this opinion the other judges concurred.