## STATE OF CONNECTICUT *v.* PALMER GAINES
### (11385)

PETERS, C. J., HEALEY, PARSKEY, SHEA and SANTANIELLO, Js.

Argued February 5—decision released June 4, 1985

*Temmy Ann Pieszak,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Carl Schuman,* assistant state's attorney, with whom, on the brief, were *John Kelly,* state's attorney, and *William Domnarski,* deputy assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant, Palmer Gaines, was charged by information with one count of robbery in the first degree. The charging document specifically alleged that the defendant "did commit a robbery and

in the course of the commission of said robbery he displayed what he represented by his words or conduct to be a pistol or revolver, in violation of Section 53a-134 (a) (4) of the General Statutes of Connecticut."[1] A jury convicted the defendant of the charged offense and he was sentenced to a term of not less than six nor more than twelve years imprisonment. The defendant appeals from the judgment of conviction claiming that the evidence adduced at trial was insufficient to prove him guilty of robbery in the first degree as charged in the information. We find no error.

From the evidence presented at trial, the jury could reasonably have found the following facts. On July 7, 1980, at approximately 5:30 p.m., the defendant and another man entered the Shoetown store in Derby. At the time of their entrance, there were four employees and no customers in the store. After consulting with a salesclerk, the defendant selected a pair of shoes and followed the clerk to the counter where the cash register was located. The three other employees were at the cash register at this time.

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

"(b) Robbery in the first degree is a class B felony provided any person found guilty under subdivision (2) of subsection (a) shall be sentenced to a term of imprisonment of which five years of the sentence imposed may not be suspended or reduced by the court."

As the salesclerk who had waited on the defendant went behind the register counter to write up the sale, the defendant followed him. At that point, the four employees saw that the defendant was armed. The employees, each of whom testified at trial, variously described the defendant's weapon as "a handgun," a "long barreled pistol," "[j]ust a handgun," and "a handgun." Aside from one employee's testimony that the gun was black, none of the witnesses provided any further descriptive details concerning the weapon, and the gun was not produced at trial.

The defendant and his companion took approximately $1500, which had been removed from the store's cash register and safe by one of the employees upon their direction. The two men then ordered the four employees "to go in the side stockroom and lie face down and not to turn around or he'd shoot us if he saw any faces." When the employees had complied, the defendant and his accomplice took the wallets of two of the employees, containing a total of about $207, and left the store. The weapon used by the defendant was never recovered.

At trial, the jury was instructed that "[t]he law as charged in this case, provides that a person is guilty of robbery in the first degree when in the course of the commission of the crime, or of immediate flight therefrom, he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a pistol or a revolver."[2] The court then

[2] In a supplemental reply brief filed after oral argument, the defendant raised for the first time on appeal an objection to this portion of the trial court's jury instructions. His claim is that by charging the jury on the "threat of use" as well as the "display" of what was represented to be a pistol or revolver, the court in effect amended the information and enlarged the offense charged in violation of his due process rights. See *State* v. *Belton*, 190 Conn. 496, 500–504, 461 A.2d 973 (1983); *State* v. *Carter*, 189 Conn. 631, 645–47, 458 A.2d 379 (1983). We granted the defendant permission to file a supplemental brief to give him the opportunity to respond to a posi-

charged the jury as to "the definition of pistol or revolver . . . which is defined in our penal code. A pistol or revolver means any firearm having a barrel less than twelve inches." General Statutes § 53a-3 (18). At the conclusion of the jury charge, the defendant moved for a judgment of acquittal on the ground that there was insufficient evidence that the weapon displayed by the defendant had a barrel of less than twelve inches. The court denied the motion, stating that there was "at least sufficient evidence to go to the jury," and an exception was taken.

The defendant's sole claim of error on appeal is that "by neglecting to present testimony as to the apparent length of the gun displayed, the state failed to prove an essential element of robbery in the first degree as charged." We disagree.

In *State* v. *Hawthorne,* 175 Conn. 569, 402 A.2d 759 (1978), we had occasion to interpret the specific statutory provision under which this defendant was charged. The defendant in *Hawthorne* was charged with first degree robbery under General Statutes § 53a-134 (a) (4), "in that he or another participant in the crime displayed or threatened the use of what he represented by his words or conduct to be a firearm." Id., 570. He attacked his conviction on the ground that there was no proof that the weapon he used, which was admitted into evidence at trial, was operable. In support of his claim that the legislature made operability an element of the crime under subsection (a) (4), the

tion taken by the state at oral argument that had not been presented in the state's brief. Such permission was not meant as an open-ended invitation to argue unrelated claims that had not been raised in the defendant's appellate brief. Although the defendant included in his preliminary statement of issues the general category of errors in the court's jury charge, he chose not to pursue any such claim in his brief on appeal. Since any preliminary issue not briefed is considered abandoned; *State* v. *Samaha,* 180 Conn. 565 n.1, 430 A.2d 1290 (1980); we decline to review this newly presented claim of error.

defendant pointed to the statutory definition of "firearm" contained in General Statutes § 53a-3 (19), which provides: " 'Firearm' means any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded *from which a shot may be discharged.* " (Emphasis added.) We rejected the defendant's argument, holding that "the essential element of subsection (a) (4) . . . is the *representation* by a defendant that he has a firearm. Under this portion of § 53a-134, a defendant need not have an operable firearm; in fact, he need not even have a gun. He need only *represent* by his words or conduct that he is so armed. Moreover, it is undisputed that the legislature could make the representation by a defendant that he had a gun an element of robbery in the first degree." Id., 573.

In this case, the defendant concedes that the state was not obligated to produce the weapon involved as evidence at trial or to prove that what the defendant represented by his words or conduct to be a pistol or revolver was in reality such a weapon. Nonetheless, he argues that it was incumbent upon the prosecution to show that what the defendant displayed *appeared* to be a pistol or revolver within the statutory definition of those terms, that is, a "firearm having a barrel less than twelve inches." General Statutes § 53a-3 (18). He suggests that the state easily could have satisfied this evidential requirement by asking any of the four eyewitnesses to testify as to the apparent length of the barrel on the gun displayed by the defendant. The absence of any evidence that the gun's barrel was less than twelve inches, he argues, constitutes a failure to prove an element of the charged offense and requires that the jury's verdict be set aside.

The defendant's argument is unpersuasive, particularly when viewed in the context of the legislative purpose behind General Statutes § 53a-134 (a) (4) and our

previous interpretation of that provision in *Hawthorne,* recently reaffirmed in *State* v. *Dolphin,* 195 Conn. 444, 449–50, 488 A.2d 812 (1985). " 'Although the principle is well established that penal statutes must be strictly construed, the application of common sense to the language of a penal law is not to be excluded in a way which would involve absurdity or frustrate the evident design of the lawgiver.' *State* v. *Pastet,* 169 Conn. 13, 21–22, 363 A.2d 41, cert. denied, 423 U.S. 937, 96 S. Ct. 297, 46 L. Ed. 2d 270 (1975). 'In determining the true meaning of a statute when there is genuine uncertainty as to how it should apply, identifying the problem in society to which the legislature addressed itself by examining the legislative history of the statute under litigation is helpful.' *State* v. *Campbell,* [180 Conn. 557, 562, 429 A.2d 960 (1980)]." *State* v. *Belton,* 190 Conn. 496, 505–506, 461 A.2d 973 (1983).

In *State* v. *Hawthorne,* supra, we identified the societal evil that the legislature aimed to punish or prevent in enacting our robbery statutes: "Robbery is defined in § 53a-133 as larceny which involves the use or *threat* of immediate physical force to prevent or overcome the resistance of the victim. Robbery is an offense against the person, the distinguishing characteristic of which is the intimidation of the victim. The ability of a defendant actually to do what he has threatened, therefore, is not an essential element of this crime." Id., 573. "It borders on the absurd"; *State* v. *Belton,* supra, 507; to hold on the one hand that the state need not prove the operability or even the existence of a weapon to obtain a conviction of first degree robbery under General Statutes § 53a-134 (a) (4), yet at the same time to require evidence of the apparent length of the weapon's barrel when the defendant is charged under the identical subsection with having displayed what he represented by his words or conduct to be a pistol or revolver. That the length of the gun's barrel is specified in the statu-

tory definition of "pistol or revolver" under General Statutes § 53a-3 (18) is no more significant to us here than was the requirement of operability contained in the statutory definition of "firearm" in *Hawthorne.* The essential element of General Statutes § 53a-134 (a) (4) is the *representation* by a defendant that he has a firearm; *State* v. *Hawthorne,* supra, 573; not the specific identifying characteristics of the weapon alleged in the information.

In *State* v. *Sharpe,* 195 Conn. 651, 666–68, 491 A.2d 345 (1985), we upheld a conviction of first degree assault, despite the court's failure to instruct the jury on the statutory definition of "pistol" as charged in the information. We rejected the defendant's argument that the state failed to prove a necessary element of the crime charged because "[t]he statute [General Statutes § 53a-59 (a) (1)] does not include as a necessary element that the deadly weapon used be a pistol. The use of the term 'pistol' in the information was merely descriptive and not a necessary element of first degree assault." Id., 667. Here, the essential element that the state was required to prove was the defendant's representation that he had a gun. All four of the Shoetown store employees present during the robbery gave uncontroverted testimony that the defendant displayed a "handgun" or a "long barreled pistol." This evidence was certainly sufficient to sustain the defendant's conviction of robbery in the first degree under General Statutes § 53a-134 (a) (4).

There is no error.

In this opinion PETERS, C. J., HEALEY and PARSKEY, Js., concurred.

SHEA, J., concurring. The majority opinion omits reference to the fact that, after the court denied the defendant's motion for an acquittal made after the

charge to the jury, the state moved to amend the information by adding the words "or other firearm" following the reference to "pistol or revolver." Practice Book § 624 provides that such a substantive amendment may be permitted for "good cause shown . . . at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced." The addition of the alternative, "or other firearm," as sought by the state would have merely conformed the information to the proof. It would not have charged any "additional or different offense" or prejudiced any "substantive rights of the defendant," as the majority implicitly has also concluded. Under the circumstances, therefore, the trial court erroneously denied the proffered amendment, which would have cured the deficiency in the evidence upon which the defendant relies in his appeal. See *State v. Ramos,* 176 Conn. 275, 277, 407 A.2d 952 (1978); *State v. Ruiz,* 171 Conn. 264, 368 A.2d 222 (1976). The defendant is not entitled to a new trial because of an erroneous ruling which precluded the state from remedying a simple pleading defect in a manner not prejudicing substantive rights. Accordingly, I concur in the result.

I disagree with the opinion that *State v. Hawthorne,* 175 Conn. 569, 402 A.2d 759 (1978), excuses the absence of any evidence in this case that the defendant used "what he represented by his words or conduct to be a pistol," as charged in the information. In *Hawthorne,* the manner in which the robbery participants used their pistols to commit the crime was clearly a representation of the operability of those weapons, as the victims undoubtedly believed. In the present case there is no evidence that the defendant represented that the barrel of the gun he used was less than twelve inches, as would be necessary to prove he represented it to be a pistol.