STATE OF CONNECTICUT *v.* ANTHONY CAIN
(8056)
(8057)

DALY, NORCOTT and HEIMAN, Js.

Argued January 18—decision released August 20, 1991

*Richard Emanuel,* assistant public defender, with whom, on the brief, were *G. Douglas Nash,* public defender, *Suzanne Zitser,* assistant public defender, and *Kent Drager,* assistant public defender, for the appellant (defendant).

*Harry Weller,* assistant state's attorney, with whom, on the brief, were *Mary Galvin,* state's attorney, *Frank McQuade,* supervisory assistant state's attorney, and *Kathryn St. Amand,* law student intern, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70, burglary in the third degree in violation of General Statutes § 53a-103, and one count of harassment in violation of General Statutes § 53a-183 (a) (3).[1] The defendant claims that the trial court improperly (1) denied his motion to strike certain testimony despite the state's failure to produce relevant 911 and police broadcast tapes, (2) denied his motion for severance, (3) violated his right to due process by allowing the elicitation of evidence of his invocation of his constitutional rights, (4) denied his motion for a judgment of acquittal on the burglary and harassment counts despite insufficient evidence, (5) instructed the jury on the elements of sexual assault in the first degree, and (6) refused to exclude a state's exhibit. We affirm the judgment of the trial court.

The following facts are necessary for the resolution of this case. From 1985 until December, 1987, the

[1] The state's charging document cites a violation of General Statutes § 53a-183 (3). This appears to be a scrivner's error, in that the only portion of § 53a-183 that carries a subdivision (3) is § 53a-183 (a) (3). This conclusion is further supported by the fact that the text of the substitute information tracks the wording of § 53a-183 (a) (3), in that it reads: "on or about the 21st day of June 1988, the said Anthony W. Cain with intent to harass, annoy or alarm another person did make telephone calls in a manner likely to cause annoyance or alarm in violation of C.G.S. 53a-183 (3)." By way of comparison, General Statutes § 53a-183 (a) (3) provides that "[a] person is guilty of harassment in the second degree when . . . with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

defendant and the victim were romantically involved. In December, 1987, the victim severed her relationship with the defendant. After their breakup, the defendant began repeatedly calling the victim at home and at work. On January 23, 1988, the defendant telephoned the victim and threatened her, stating that she would be sorry if she did not get back together with him. The victim filed a complaint with the Milford police department, but did not seek the defendant's arrest at that time.

On February 14, 1988, the defendant telephoned the victim at her apartment and asked her to go to lunch with him. She refused his invitation and turned on her answering machine to avoid further calls from him. After the victim showered and got dressed, she noticed that her cat was standing by the door. She opened the door and the defendant forced his way into her apartment, forced her onto the sofa, and sexually assaulted her. The victim then retreated to the bathroom and locked the bathroom door behind her. She stayed in this room until the defendant left the apartment.

After the defendant left her apartment, the victim called a friend, who advised the victim to call 911. The victim then dialed 911 and reported that she had been sexually assaulted and named the defendant as her assailant. The defendant was arrested and charged with first degree sexual assault and burglary in the third degree, and was released on bond.

On February 16, 1988, the victim began to keep a written record of telephone calls from the defendant. On February 17, she logged seventy calls. The police put a trap on the defendant's business telephone line and it registered thirty-four calls to the victim on February 16 and 17, 1988. The defendant made additional calls to the victim on February 18, 1988. The defendant was arrested again and charged with harass-

ment. He was again released on bond with the condition that he stay away from the victim. His bond was later raised to $100,000 after he admitted that he had violated that condition. Although he could not raise this amount initially, he was later released after posting the bond.

On June 21, 1988, the defendant phoned the victim at her health club. As a result of this phone call, the defendant was again arrested and charged with harassment and tampering with a witness.

The defendant moved for acquittal on all charges at the close of the state's case, claiming that there was insufficient evidence to prove the defendant's guilt. The court granted the defendant's motion as to the harassment charges that arose out of the telephone calls of February 16, 17, and 18, 1988, and as to the charges of tampering with a witness that arose out of a telephone call to the victim's health club on June 21, 1988.

I

MOTION TO STRIKE

The defendant first claims that the trial court improperly denied his motion to strike certain testimony based on the state's failure to produce the 911 and police broadcast tapes. As a preliminary matter, we note that the defendant never moved to strike any of the officers' testimony relating to the police broadcast tapes at trial. Practice Book § 4185 provides in pertinent part that this court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Further, the defendant bears the burden of seeking a definitive ruling on the striking of each witnesses' testimony, after each has testified at trial, in order to comply fully with our rules of practice and to preserve his claim of error as to each witness. *State* v. *Johnson,* 214 Conn. 161, 170, 571 A.2d

79 (1990). Because the defendant did not properly preserve his claim with respect to the police broadcast tapes, we will not consider it. We therefore focus our analysis solely on the trial court's refusal to strike the victim's testimony in light of the Milford police department's destruction of the 911 tape.

The following facts are necessary to the resolution of this claim. At trial, the victim testified that when she called her friend after the defendant had left the apartment, she told her, "Tony assaulted me." The victim also testified that when she dialed 911 to report the incident, she told the police that the defendant had raped her. When the victim's friend testified, she stated that when the victim telephoned her immediately after the incident she said, "Tony hit me."

Before the trial began, the trial court granted the defendant's motion for discovery seeking "[c]opies of statements of prosecution witnesses in the possession of the State or its agents, including state and local law enforcement officers, which statements relate to the subject matter about which the witness will testify . . . ."[2] Although the 911 call was tape-recorded when it was made, this tape was erased thirty days after the incident pursuant to Milford police department policy. Consequently, the state was unable to produce the tapes at the time of trial. The defendant contends that the destruction of the 911 tape and the state's inability to produce it violated his rights under General Statutes § 54-86b and Practice Book § 752. He also alleges that the 911 tapes could have explained the discrepancy between the victim's testimony and that of her friend,

---

[2] Despite the defendant's assertions to the trial court to the contrary, a separate motion for the preservation and production of these tapes was never properly filed, and, therefore, was never acted upon by the trial court. The only motion that is properly before us for review with respect to this issue is the defendant's motion for discovery.

and that its nonproduction violated his right to confrontation as guaranteed under the state and federal constitutions. We agree with the defendant that the state's failure to produce the 911 tape violated our rules of practice, but we conclude, nonetheless, that this violation was harmless on the facts of this case.

Although the law in this area is still evolving, past cases have analyzed the destruction of 911 tape recordings in the same way that we have analyzed the destruction of any other recorded statement. Compare *State* v. *Pollitt,* 205 Conn. 61, 85–87, 530 A.2d 155 (1987) (defendant suffered no substantial prejudice from the loss of the victim's 911 statement), with *State* v. *Belle,* 215 Conn. 257, 268, 576 A.2d 139 (1990) (defendant not prejudiced by destruction of victim's statements before trial).

Practice Book § 752 provides that, upon a defendant's request, the state must disclose "any statement of the witness in the possession of the state or its agents . . . ." See General Statutes § 54-86b. The disclosure provisions of § 54-86b and Practice Book § 752 apply to a 911 tape recording. *State* v. *Williamson,* 14 Conn. App. 108, 112–13, 552 A.2d 815 (1988), aff'd, 212 Conn. 6, 562 A.2d 470 (1989). The state was unable to comply with this requirement at trial because of the police department's routine erasure of the 911 tape.

The state acknowledges that the 911 tape is a statement within the meaning of Practice Book § 749 (2),[3] and the defendant concedes that the tape was not destroyed in bad faith,[4] or by a deliberate act intended to thwart

[3] Practice Book § 749 provides: "The term 'statement' as used in Sec. 748 means . . . (2) A stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by a person and recorded contemporaneously with the making of such oral statement."

[4] "In the context of a § 752 violation . . . the term 'bad faith' connotes a deliberate act done with intent to deprive the defense of information." *State* v. *Williamson,* 212 Conn. 6, 16, 562 A.2d 470 (1989).

the defense. Where, as here, " 'a case involves intentional, but not bad faith, destruction of the statement of a state's witness, an automatic sanction of striking that witness' testimony is not required. . . .' *State* v. *Johnson,* 214 Conn. 161, 168, 571 A.2d 79 (1990). Rather, under such circumstances, 'it is appropriate that the court weigh " 'the culpability of the state for its failure to make disclosable material available on the one hand, against any resulting prejudice to the defendant on the other. . . .' " *State* v. *Williamson,* [212 Conn. 6, 14, 562 A.2d 470 (1989)]. This approach gives broad discretion to the trial court. Id. Where . . . the destruction of a witness' statement, although not in bad faith, is deliberate, the state properly bears the burden of establishing harmlessness. . . . "[T]he proper harmless error inquiry is whether the result of the trial may have been different had the state not violated the rule." . . .' " (Citations omitted.) *State* v. *Belle,* supra; *State* v. *Dedrick,* 24 Conn. App. 518, 589 A.2d 1241 (1991). Where the state's failure to produce the tape rises to the level of a denial of the defendant's right to confrontation the state must prove harmlessness beyond a reasonable doubt. *State* v. *Johnson,* 214 Conn. 161, 175, 571 A.2d 79 (1990). Where the state's failure does not rise to this level, however, the appropriate inquiry is whether the state has proven that it is more probable than not that the state's nonproduction was harmless. Id.

The trial court found that the defendant's constitutional right to confrontation was not violated, and that he was not prejudiced by the state's inability to produce the 911 tape. We agree. Any credibility issue that arose because of the conflict between the victim's testimony and that of her friend was placed squarely before the jury, and, thus, the defendant's constitutional right to confrontation was not violated. Further,

the analysis under the state constitution found in the defendant's brief acknowledges that the state's failure to preserve the 911 tape is a Jencks[5] material type violation. Our Supreme Court has held that a claim relating to Jencks material is not of constitutional proportion. *State* v. *Myers,* 193 Conn. 457, 469, 479 A.2d 199 (1984). We decline the defendant's invitation to expand this rule of law. Thus, we will apply the more probable than not standard, which is the analysis that is mandated in *State* v. *Johnson,* supra. In applying this standard, we conclude that the defendant was not prejudiced by the absence of the 911 tape.

The importance of the 911 tape in the context of the entire trial is insignificant. The theory of defense was that the defendant and the victim had had sexual intercourse at the time and place as claimed by the victim, but that their encounter was consensual. Even if the victim had merely told her friend that "Tony hit me," that statement itself would be contrary to the defendant's assertion of consensual sexual intercourse. From this perspective the victim's characterization of the crime has been consistent. Whether she told her friend that the defendant had "hit" or "assaulted" her, she nonetheless indicated that a struggle had taken place between her and the defendant during the undisputed sexual relations. Following the same logic, it is inconsequential whether she told the 911 operator that she had been "assaulted" or "raped," especially in view of the fact that a rape is a sexual assault. Thus, it is unreasonable to conclude that the jury's verdict would have been different had the tape been available to them, in that it is illogical that the victim would have dialed 911 to report consensual sexual relations. The trial court properly denied the defendant's motion to strike.

[5] 18 U.S.C. § 3500. Our Practice Book §§ 748 through 755 are modeled after the federal Jencks Act. See *State* v. *Anonymous (83-FG),* 190 Conn. 715, 732, 463 A.2d 533 (1983); *State* v. *Gonzales,* 186 Conn. 426, 432, 441 A.2d 852 (1982).

Our analysis does not end here, however, because we recognize that the indefinite preservation of 911 tapes can place an unreasonable burden on police departments. We therefore now address the question of the rule for police departments to follow for the future preservation of 911 tapes.

We hold that commencing from this date, 911 tapes are excluded from that portion of Practice Book § 752[6] that states that a defendant may refrain from moving for production of statements until after a state's witness has testified. Henceforth, police departments are mandated to keep and maintain all 911 tapes for a period of one year from the date of the 911 call. This is consistent with the period mandated by Practice Book § 956B (b),[7] the speedy trial rule. In this way all

[6] Practice Book § 752 provides: "[DISCLOSURE OF STATEMENTS—STATEMENTS OF WITNESS]—— ——PRODUCTION FOLLOWING TESTIMONY

"After a witness called by the state has testified on direct examination at trial, the judicial authority shall, on motion of the defendant, order the state to produce any statement of the witness in the possession of the state or its agents, including state and local law enforcement officers, which statement relates to the subject matter about which the witness has testified."

[7] Practice Book § 956B provides in pertinent part: "[SPEEDY TRIAL]—— TIME LIMITATIONS

"(b) Except as otherwise provided herein and in Sec. 956C, the trial of a defendant charged with a criminal offense on or after July 1, 1985, shall commence within twelve months from the filing of the information or from the date of the arrest, whichever is later.

"The trial of such defendant shall commence within eight months from the filing of the information or from the date of the arrest, whichever is later, if the following conditions are met:

"(1) the defendant has been continuously incarcerated in a correctional institution of this state pending trial for such offense; and

"(2) the defendant is not subject to the provisions of Gen. Stat. § 54-82c.

"(c) If an information which was dismissed by the trial court is reinstated following an appeal, the time for trial set forth in paragraphs (a) and (b) shall commence running from the date of release of the final appellate decision thereon.

"(d) If the defendant is to be tried following a mistrial, an order for a new trial, an appeal or collateral attack, the time for trial set forth in paragraphs (a) and (b) shall commence running from the date the order occasioning the retrial becomes final."

police departments are placed on notice that they must preserve 911 tape recordings for one year from the date on which they are recorded. If a defendant does not request the preservation of a 911 recording within this time, the police are then free to erase the tape and reuse it. Conversely, when a defendant does request the preservation of a 911 tape within the one year time period, it would be a per se violation of Practice Book §§ 751 et seq. and General Statutes § 54-86b if the police were to erase the requested tape, and the trial court would have no recourse but to strike the relevant witness' testimony.

A one year period gives a defendant ample time to enter a plea, file his discovery motions pursuant to Practice Book §§ 809[8] and 811,[9] discover the existence of a 911 recording, and request the tape's preservation. Likewise, this one year limitation would relieve some of the burden previously placed on police departments by the current practice. Of course, this new rule presupposes an arrest within a reasonable length of time after the 911 call is made. Should the police inves-

---

[8] Practice Book § 809 provides: "[PRETRIAL MOTION PRACTICE]—PRETRIAL MOTIONS AND REQUESTS

"Unless otherwise provided by statute or rule, or permitted by the judicial authority for good cause shown, pretrial motions and requests shall consist only of one or more of the following:

"(1) Motions to dismiss under Sec. 814;

"(2) Motions and requests for discovery and depositions under Chapter 26;

"(3) Motions to suppress evidence under Sec. 820;

"(4) Motions for joinder or severance under Sec. 827;

"(5) Motions for a bill of particulars under Sec. 830;

"(6) Motions for transfer of prosecution under Sec. 834."

[9] Practice Book § 811 provided, at the time in question here, in pertinent part: "[PRETRIAL MOTION PRACTICE]—TIME FOR MAKING PRETRIAL MOTIONS OR REQUESTS

"Unless otherwise provided by these rules or statute, all pretrial motions or requests shall be made not later than ten days after the entry of a plea in the court where the case will be tried, or, for good cause shown, at such later time as the judicial authority may fix."

tigation be protracted, however, the police shall bear the burden of preserving the tape for one year from the date of arrest.

## II

### MOTION FOR SEVERANCE

The defendant filed a pretrial motion for severance requesting a separate trial for the crimes charged in each of four separate informations,[10] and the state moved for joinder of the charges. The defendant's motion was denied and the state's motion was granted. On appeal, the defendant claims that the trial court improperly denied his motion for severance, and, consequently, denied his state and federal rights to due process and a fair trial. The state argues that because there is a common legal relationship among the crimes charged in the four informations, the trial court did not abuse its discretion when it denied the defendant's motion for severance. We agree with the state.

"General Statutes § 54-57[11] and Practice Book § 829[12] authorize a trial court to order a defendant

---

[10] The defendant was charged in four informations as follows: (1) Docket No. CR5-71783, sexual assault in the first degree and burglary in the third degree, (2) Docket No. CR5-71829, one count of harassment based on the defendant's February 16, 1988 telephone calls to the victim, (3) Docket No. CR5-71828, two counts of harassment based on the defendant's telephone calls to the victim on February 17 and 18, 1988, and (4) Docket No. CR5-73898, harassment and tampering with a witness based on two calls to the victim at her health club on June 21, 1988.

[11] "[General Statutes] Sec. 54-57. JOINDER OF OFFENSES OF THE SAME CHARACTER. Whenever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise."

[12] "[Practice Book] Sec. 829. ——TRIAL TOGETHER OF INDICTMENTS OR INFORMATIONS

"The judicial authority may, upon his own motion or the motion of any party, order that two or more indictments or informations or both, whether against the same defendant or different defendants, be tried together."

to be tried jointly on charges arising separately. In deciding whether to sever informations joined for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb." *State* v. *Herring*, 210 Conn. 78, 94, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). "The defendant bears a heavy burden of showing that ' "denial of severance resulted in substantial injustice," and that any resulting prejudice was "beyond the curative power of the court's instructions." ' " Id., 94–95. Where the state's orderly presentation of evidence has prevented confusion of the jury and has enabled the jurors to consider the evidence relevant to each offense separately and distinctly, we will not conclude that the trial court has manifestly abused its discretion in denying the defendant's motion for severance. *State* v. *Pollitt*, 205 Conn. 61, 68, 530 A.2d 155 (1987). "Where evidence of one incident can be admitted at the trial of [another incident], separate trials would provide the defendant no significant benefit. It is clear that, under such circumstances, the defendant would not ordinarily be substantially prejudiced by joinder of the offenses for a single trial." (Emphasis omitted.) Id.

As we have noted, the informations contained charges of sexual assault in the first degree, burglary in the third degree, tampering with a witness, and three counts of harassment. The event that triggered the defendant's actions was the deterioration of his romantic relationship with the victim. Evidence of the defendant's threats and harassing phone calls provided probative evidence of the defendant's motive and intent on the burglary and sexual assault charges. See *State* v. *Ramsundar*, 204 Conn. 4, 14–16, 526 A.2d 1311, 484 U.S. 955, 108 S. Ct. 348, 98 L. Ed. 2d 374 (1987) (evidence of prior misconduct and conviction for harass-

ment of this victim that followed the termination of a romantic relationship admissible to prove intent and motive); see also *State* v. *Thomas,* 205 Conn. 279, 285, 533 A.2d 553 (1987) (evidence of deteriorating relationship and threats admissible to show defendant's motive); and *State* v. *Graham,* 13 Conn. App. 554, 565, 538 A.2d 236 (1987), cert. denied, 207 Conn. 812, 541 A.2d 1241 (1988) (where threats are tied to defendant, evidence of those threats is generally admissible either on the theory that they are inconsistent with the defendant's claim of innocence, or that the defendant's conduct exhibits a consciousness of guilt). Because evidence for all counts charged would have been admissible in a trial on the first information charging sexual assault and burglary, it was, therefore, in the interest of judicial economy to join the charges in the four informations for trial. In addition, we conclude that the trial court's instruction to the jury specifically informed the jurors of which charges the defendant had been acquitted, instructed them as to what evidence was no longer in the case, and reminded the jurors that they must reach their verdict as to each count separately. The trial court did not abuse its discretion in denying the defendant's motion for severance.

## III

### DUE PROCESS VIOLATIONS

The defendant next claims that the trial court violated his right to due process on three separate occasions when it allowed the state to elicit evidence of the invocation of his constitutional rights.

The following facts are necessary to the resolution of this claim. First, the defendant argues that during the state's direct examination of Officer Kevin Calderwood of the Milford police department, the officer testified that after the defendant had come into the police department to tell his side of the story, Calderwood

handed the defendant a blue card containing the defendant's *Miranda*[13] rights. In response to the state's question, Calderwood testified that the defendant refused to sign and date the *Miranda* card. The defendant moved to strike the officer's testimony and the court granted the defendant's motion, striking both the question and Calderwood's reply. The court further instructed the jury to "disregard both the question as well as the answers, if any, and not to speculate on it in any way whatsoever." The court then excused the jury for the luncheon recess and instructed the state that the information it sought was not relevant and that the question and answer would not be allowed.

The defendant next asserts that after the luncheon recess, the state resumed its direct examination of Calderwood as to his questions to the defendant. The officer testified that the defendant had informed him that the victim had accepted his luncheon invitation and shortly after he had arrived at the victim's home they had engaged in consensual sexual relations. Calderwood then stated that he had twice asked the defendant what the victim was wearing when he arrived at her apartment and the defendant gave two conflicting answers. Calderwood further testified that Detective Steve Fournier, who was also present during the questioning of the defendant, told the defendant that the call the defendant had made to the victim arranging their lunch date may have been recorded, and that the defendant then "stated he had nothing else to say without an attorney present." The state then asked, "How would you describe the defendant's reaction as he was indicating that he didn't have anything else to say?" Calderwood replied, "He got a little excited." The defendant moved to strike the state's question and

[13] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

answer. The court then questioned the state as to what information it was seeking from Calderwood and the state replied, "I am asking the detective upon the defendant's hearing that the conversation might have been recorded what was his reaction." The court then overruled the defendant's motion to strike.

The defendant argues that the third violation of his rights took place during the state's second redirect examination of Calderwood when he was asked if the defendant had changed his responses when he had been confronted with a change in circumstances. Calderwood stated that "[t]oward the end of our interview, which was not very long, when Detective Fournier was pressing Mr. Cain about the lunch date over the telephone he really became upset and he stated that he wanted to talk to his attorney and nothing else was said. We terminated our interview." The defendant noted that "the state's last question referred to a change in [the defendant's] either demeanor or responses with regard to a change in circumstances." He then moved to strike Calderwood's statement arguing that evidence of the defendant's invocation of his constitutional right to an attorney is prohibited under *Doyle* v. *Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976).

On appeal, the defendant claims that in these three interviews the state used an effective trial tactic to inform the jury that he had remained silent and had requested counsel when confronted with the possibility that his call to the victim may have been recorded. He also reasserts his claim under *Doyle* v. *Ohio,* supra. We conclude that the testimony in this case did not violate the principles set forth in *Doyle.*

"*Doyle* v. *Ohio* proscribes the use for impeachment purposes of a defendant's silence subsequent to his arrest and after receiving *Miranda* warnings. 'The

point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony.' " (Emphasis omitted.) *State* v. *Shashaty,* 205 Conn. 39, 48, 529 A.2d 1308 (1987), cert. denied, 484 U.S. 1027, 108 S. Ct. 753, 98 L. Ed. 2d 766 (1988); quoting *Wainwright* v. *Greenfield,* 474 U.S. 284, 292, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986). The state's reference to a defendant's assertion of his right to remain silent is not always a constitutional violation. *State* v. *Casey,* 201 Conn. 174, 182, 513 A.2d 1183 (1986). This evidence may be offered to demonstrate the officers' investigative effort and the sequence of events as they unfolded. Id.

The defendant's argument must fail for two reasons. First, as pointed out by the trial court, the purpose of the state's questions was to ascertain the defendant's reaction to the officer's indication that his phone calls to the victim may have been recorded, and not to elicit his assertion of his right to remain silent for impeachment purposes as required by *Doyle.* Second, although the evidence of the defendant's request for counsel was heard by the jury, it was admissible as demonstrative evidence of the officer's investigative effort, and to show the sequence of events as they unfolded. We conclude that the officer's testimony was properly admitted.

IV

SUFFICIENCY OF THE EVIDENCE

The defendant next claims that there was insufficient evidence to convict him of the crime of burglary in the third degree and harassment.

Our scope of review on sufficiency of evidence claims is limited to a two part inquiry. *State* v. *Summerville,*

13 Conn. App. 175, 184–85, 535 A.2d 818 (1988). " 'We first review the evidence presented at trial, construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' . . ." (Citations omitted.) *State* v. *Simino,* 200 Conn. 113, 116–17, 509 A.2d 1039 (1986).

Our review of the record before us indicates that the evidence in this case overwhelmingly supports the jury's verdict, and was sufficient to convict the defendant of the crimes charged.

## V

### JURY CHARGE

The defendant next claims that the trial court improperly instructed the jury on the question of consent and on the statutory element of the threat of the use of force. He also claims that the court's instructions on the crime of burglary in the third degree deprived him of a unanimous verdict. We will address each of these assertions individually.

### A

#### CONSENT

The defendant argues that the trial court improperly instructed the jury on the elements of compulsion required for a conviction of first degree sexual assault. He argues that his own declaration "I don't know why she is upset, we've done it like that before" is sufficient to support his defense of consent. Relying on *State* v. *Smith,* 210 Conn. 132, 554 A.2d 713 (1989), he contends that this bald assertion was sufficient to have

shifted the burden to the state to prove beyond a reasonable doubt that the victim had not consented. We are unpersuaded.

First, the very language that the defendant now complains about exactly tracks his request to charge.[14] "Ordinarily, action induced by an appellant cannot be a ground for error . . . . 'It seems a bit disingenuous [however] for the defendant to claim that the trial court committed error by instructing the jury . . . when he requested an instruction on that very issue. At least where no constitutional rights are violated,[15] when an accused requests in writing that an issue be submitted to the jury, he cannot, on appeal, claim error in its submission . . . .'" (Citation omitted.) *State* v. *Turner*, 24 Conn. App. 264, 272, 587 A.2d 1050 (1991).

Further, the defendant's reliance on *State* v. *Smith*, supra, is misplaced. *Smith* stands for the proposition that "a defendant may not be convicted of . . . [sex-

[14] The defendant contends that the court's instructions that the element of compulsion would be negated by "the actual consent of the victim," that such consent "must be actual and real," and that it must be a "truly voluntary and willing act of sexual intercourse" were improper. That portion of the defendant's request to charge that dealt with this issue requested the following: *"The actual consent* of the victim to sexual intercourse will negate, will negative, the element of compelling by use of force. The consent required, however, *must be actual and real,* and not just mere surface acquiescence induced by force, by fear or shock. In order for consent to sexual intercourse to negate the element of compulsion, the intercourse must be engaged in by the other person with no compulsion, no threat, no fear, and no force. In other words, it must be *a truly voluntary and willing act of sexual intercourse.* Consent may be express or it may be implied from all the circumstances then and there existing. Whether or not the victim consented to the sexual intercourse is a question of fact which you must determine from all the circumstances which have been proven to you." (Emphasis added.)

[15] Although the defendant claims that this instruction violates his constitutional rights, he does not elaborate what rights or how they were violated. An issue that is not properly briefed is considered abandoned. *State* v. *Gaines,* 196 Conn. 395, 397–98 n.2, 493 A.2d 209 (1985).

ual assault in the first degree] if the words or conduct *of the complainant* under all the circumstances would justify a reasonable belief that she had consented." (Emphasis added.) *State* v. *Smith,* supra, 141. In addition, sexual assault in the first degree is a crime of general intent. Id., 136. In this context, the defendant's assertion that he and the victim had participated in this type of sexual relations in the past is irrelevant because whether a complainant has consented to a particular incident of sexual intercourse depends on *her manifestation* of such consent to *that* incident as reasonably and objectively construed at *that* time. Id., 140.

Thus, our examination of this portion of the court's charge leads us to conclude that the jury was properly instructed as to the crime of sexual assault in the first degree and on the issue of the victim's consent.

B

STATUTORY ELEMENT OF THE THREAT OF
THE USE OF FORCE

The defendant also argues that the trial court's instruction on sexual assault in the first degree was incomplete because, although the trial court properly explained that it was necessary for the jury to find that the defendant had compelled the victim to engage in sexual intercourse by the use of force or by the threat of the use of force, it did not define the term "the threat of the use of force."

Initially, we note that the instructions as given by the trial court are once again nearly a mirror image of the defendant's request to charge. We reiterate that we will not reverse a conviction on the basis of an action that is induced by the appellant unless his constitutional rights have been violated. *State* v. *Turner,* supra. In addition, "[d]ue process requires that the state establish beyond a reasonable doubt every essential fact

necessary to establish the crime charged . . . . A court's charge is not to be examined in a vacuum. Rather, it is to be viewed in the context of the factual issues raised at the trial." (Citations omitted.) *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982). "In this case, the [defendant's] burden is especially heavy because no erroneous instruction was given; his claim of prejudice is based on the failure to give any explanation—beyond the reading of the statutory language itself—of [an essential] element. An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson* v. *Kibbe,* 431 U.S. 145, 155, 97 S. Ct. 1730, 52 L. Ed. 2d 203 (1977).

In view of the above, and the fact that the defendant requested the instruction that was given and took no exception to this portion of the charge, we conclude that the trial court's instruction on the threat of the use of force was proper.

## C

### UNANIMNITY OF THE VERDICT

The defendant's final challenge to the jury charge is that the court's instructions on burglary in the third degree deprived him of a unanimous verdict in violation of the state and federal constitutions. We disagree.

It is axiomatic that an " 'appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or an exception has been taken immediately after the charge is delivered by the party appealing.' " *State* v. *Fallwood,* 193 Conn. 238, 259, 476 A.2d 550 (1984). The purpose of this rule is to alert the trial court to any possible claims arising from its charge while there is still an opportunity for

correction and for avoidance of an unnecessary retrial. Id. The defendant failed to preserve this claim by either of these available methods.

In addition, in the present case, the clerk of the trial court specifically inquired as to the jury's verdict on each individual count, and the trial transcript indicates that the jury foreman responded "guilty" to each count, and that the clerk responded "He stands charged, and so say you *all.*" (Emphasis added.) When this is the case, a defendant who still has any question as to the unanimity of the verdict on any or all counts, still has the opportunity to move to have the jury polled. *State* v. *Anderson,* 211 Conn. 18, 34, 557 A.2d 917 (1989). The defendant also neglected to take advantage of this third opportunity to preserve this claim.

Absent the defendant's objections, we can review his unpreserved claim only under the exceptional circumstances doctrine of *State* v. *Evans,* 165 Conn. 61, 65–66, 327 A.2d 576 (1973), as reformulated by *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989); *State* v. *Fullwood,* supra. The defendant in this case, however, offers us only an abstract assertion that this unpreserved claim represents a violation of his state and federal constitutional rights without offering us any analysis under either constitution. An issue that is not properly briefed is considered abandoned. *State* v. *Gaines,* 196 Conn. 395, 397–98 n.2, 493 A.2d 209 (1985). We conclude that the trial court properly instructed the jury on the crime of burglary in the third degree.

## VI

### ADMISSION OF STATE'S EXHIBIT

The defendant's final claim is that the trial court should not have admitted state's exhibit E, the victim's phone log recording her phone calls on February 16, 17, and 18, 1988, because the defendant was acquitted of the related harassment charges.

The following facts are relevant to the resolution of this claim. At the close of the state's case, the defendant's motion for judgment of acquittal was granted by the trial court as to the harassment charges that stemmed from the defendant's February 16, 17, and 18, 1988 telephone calls to the defendant. The trial court ruled in favor of the defendant after it held that the state had not proven the identity of the caller beyond a reasonable doubt. The trial court then struck the testimony of Eugene Bachman, a representative of the Southern New England Telephone Company, who had testified as to the telephone trap that traced the February 17 and 18 phone calls to the defendant's business telephone. The court also struck the exhibits that had been introduced by Bachman and all testimony that related to the February harassment charges. At that time, the court refused to strike Fournier's testimony as to the February calls because it found that these calls related to the harassment charge that was still pending stemming from the defendant's June 21, 1988 phone call. After the closing arguments, the court refused to strike exhibit E, which had come in without objection, because it found that these phone calls were never specifically tied to the defendant, but did go to the victim's state of mind when she received the June 21, 1988 telephone call from the defendant at her health club.

"Evidence is only admissible when it tends to establish a fact in issue or to corroborate other direct evidence in a case." *State* v. *Robinson,* 213 Conn. 243, 259, 567 A.2d 1173 (1989). The harassment charges that stemmed from the defendant's June 21, 1988 phone call to the victim's health spa required proof of the victim's state of mind, in that it was essential for the state to prove beyond a reasonable doubt that the defendant's actions were "likely to cause annoyance or alarm"[16]

[16] See footnote 1, supra.

in order to convict the defendant of harassment. The trial court properly denied the defendant's motion to strike state's exhibit E.

The judgment is affirmed.

In this opinion NORCOTT, J., concurred.

DALY, J., concurring in part, dissenting in part. I conclude that the trial court should have granted the defendant's motion to strike the victim's testimony because the missing 911 statement implicated the defendant's federal constitutional right to confront and cross-examine a critical witness. The majority's opinion has failed to consider the factors the Connecticut Supreme Court has articulated and applied in similar cases to assess whether the missing 911 statement infringed on the defendant's confrontation rights. See *State* v. *Belle,* 215 Conn. 257, 269–70, 576 A.2d 139 (1990); *State* v. *Johnson,* 214 Conn. 161, 174–75, 571 A.2d 79 (1990); *State* v. *Williamson,* 212 Conn. 6, 22–23, 562 A.2d 470 (1989) (*Williamson II*); *State* v. *Sanford,* 25 Conn. App. 255, 260–61, 594 A.2d 477 (1991). First, it must be determined whether "the trial court or a reviewing court ha[d] access to the unproduced material." *Williamson II,* supra, 22. As in *Williamson II,* neither the trial court nor this court has had access to the victim's 911 statement because it was destroyed. As in *Williamson II,* neither the trial court nor this court has had a counterpart transcript of the missing statement, read and adopted by the victim shortly after making her 911 telephone call. Id., 23. Finally, like the *Williamson II* case, the defendant's conviction obviously rested on the testimony of the victim, whose pretrial statement was destroyed. Id., 22–23. Given these factors, the defendant's right to confront and cross-examine the victim was implicated and

the state should have been held to prove beyond a reasonable doubt that the missing 911 statement was harmless. Id., 23.[1]

From the evidence adduced at trial, the state could not prove that the missing 911 statement was harmless beyond a reasonable doubt. The defendant's conviction rested squarely on the victim's testimony in this case and her testimony contained critical inconsistencies. On direct examination, the victim testified that the first person she called after the incident was her friend. The victim claimed that she told her friend that the defendant had assaulted her. She then testified that after this conversation she called 911 and reported: "I was raped." During her cross-examination, the victim testified that she told her friend, "[the defendant] raped me," not "[the defendant] hit me," as her friend had testified. She then explained that in her prior testimony she had used the word "assaulted" because she was afraid to use the term "rape," and that she had, in fact, told her friend that she was raped. During recross, the victim reaffirmed the sequence of her telephone calls and that she had reported to the 911 operator that she had been raped. The victim's friend testified that the victim called and said "[the defendant] hit me," but she was not certain of the wording, and later testified that it sounded like "[the defendant] hit me." The state submitted into evidence the victim's statement to the police on the day she called 911. The statement contained the victim's accusation that the defendant had raped her on that day.

---

[1] The trial court rendered its decision on the defendant's motion to strike before the Connecticut Supreme Court affirmed *State* v. *Williamson,* 14 Conn. App. 108, 540 A.2d 386 (1988) (*Williamson I*) in *State* v. *Williamson,* 212 Conn. 6, 562 A.2d 470 (1989) (*Williamson II*). *Williamson II* defined the appropriate standards applicable to determine the state's burden of proving harmless error. *Williamson II,* supra, 19. Thus, the trial court did not have the guidance of *Williamson II* in deciding the issue of prejudice.

The inconsistencies in the victim's testimony and in what she said to her friend on the phone are relevant to the issue of what was the victim's initial complaint to the police on that day. Although the inconsistencies have to do with what the victim told her friend about her complaint, they do indicate that the victim's call to the police, which immediately followed, was of critical importance. What the victim reported in her 911 statement would either support her accusation of rape or provide the defendant with material for further impeachment because she could have complained of an assault or of the defendant's striking her. Conceivably, the victim and the defendant could have had consensual intercourse and subsequently had a violent altercation. Simply because there may have been a temporal juxtaposition between the sexual intercourse and an assault does not lead to the inescapable conclusion that a rape occurred.

The trial court's conclusion that the defendant had not been prejudiced was based on its speculation that the 911 tape contained the victim's accusation that she had been raped.[2] This speculation is unfounded and did not address the inference of inconsistency drawn from both the victim's and her friend's testimony. Though her 911 statement may have been brief, as the facts of this case demonstrate, whether the victim reported that she had been struck, assaulted or raped would have been critical evidence for the defendant's defense and thus implicated his confrontation rights.

The defendant was able thoroughly to cross-examine the witnesses and did expose the jury to the inconsistencies contained in the victim's testimony and in her conversation with her friend. See *Williamson II*, supra,

---

[2] A court may not speculate about what a missing statement contains or how the defendant would have used this unproduced statement in his defense. *State* v. *Williamson*, 212 Conn. 6, 22–23, 562 A.2d 470 (1989).

25–26. This does not ameliorate, however, the prejudice the defendant may have suffered because he did not have available the victim's 911 statement. See id. Had the jury heard that the victim reported to the police that the defendant had struck her or assaulted her, and not that he had raped her, it might have affected the outcome of this case, at least regarding the counts of sexual assault and burglary. Thus, the trial court should have stricken the victim's testimony because of the state's failure to produce the 911 statement and the state's subsequent failure to prove the defendant had not been prejudiced beyond a reasonable doubt.

As a result of this conclusion, I would reverse the judgment of conviction on the counts of sexual assault and burglary and remand the case for a new trial on those counts. In all other aspects of the majority's opinion I concur.