STATE OF CONNECTICUT *v.* RICHARD NOWAKOWSKI (10867)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO, JS.

Argued October 14—decision released December 7, 1982

*Raymond C. Seligson,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, was *Arthur C. Hadden,* deputy assistant state's attorney, for the appellee (state).

GRILLO, J.  The defendant was charged in an information with the crime of misconduct with a motor vehicle in violation of § 53a-57 of the General Statutes.[1]  After a jury trial he was found guilty, and from the judgment rendered he has appealed.

Two grounds of appeal are advanced: (a) that the court erred in denying the defendant's motion for a mistrial following a remark by a prosecution witness; (b) that the court erred in having portions of the direct testimony, but none of the testimony on cross-examination, of two prosecution witnesses read to the jury following a request by the jury.

The alleged improper remark by Officer Joseph L. Collet occurred during cross-examination following a series of questions by defense counsel.[2]  Following the response, "[i]f he was so innocent he would have given me a statement," defense counsel moved for a mistrial, asserting that the answer was inflammatory and malicious and prevented a fair

---

[1] In his brief, the defendant states that he was charged also with reckless driving in violation of § 14-222 of the General Statutes and convicted thereon.  This appeal, however, does not relate to that charge.

[2] Questioning by defense counsel of Officer Joseph L. Collet:

"Q. And with respect to Mr. Nowakowski, did you at any time advise him of his constitutional rights to remain silent?

A. His constitutional rights?

The Court: Answer the question, yes or no.

The Witness: No.

The Court: All right.

Q. Now there came a time when you went to his place of employment?

A. Yes.

Q. This was after you spoke to him twice?

A. Yes.

Q. And was this before or after you applied for a warrant?

A. This, I believe, was after, sir.

Q. After you applied for the warrant?

trial. The court then gave a claimed curative instruction.[3] Defense counsel took an exception to the charge, stating no reason for the exception.

In contending that the statement of the witness violated his constitutional rights under the fourteenth amendment to the United States constitution, the defendant cites *Griffin* v. *California,* 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965) and *Doyle* v. *Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). Succinctly stated, *Griffin* condemns comments to the jury by a prosecutor upon a defendant's failure to testify as to matters which he can reasonably be expected to deny or to explain. *Griffin* v. *California,* supra, 615. *Doyle* prohibits cross-examination by a prosecutor relative to post-arrest silence by a defendant after he has been given the *Miranda* warnings, the court concluding that it would be a deprivation of due process to allow a defendant's silence to impeach an explanation subsequently offered at trial. *Doyle* v. *Ohio,* supra, 618.

The attacked comment involved in the present case was not elicited as a response to prosecutorial

A. Yes, sir.

Q. So, at that time you knew that you were going to have him arrested for more serious charges?

A. I did not know whether it was going to be approved or not.

Q. And after you applied for the charge of misconduct with a motor vehicle, you again went to his place of employment to get a statement from him, didn't you?

A. If he was so innocent he would have given me a statement."

[3] "Ladies and gentlemen of the jury, the court will instruct you to disregard the opinion of the witness, to the implication that he attached to the failure . . . or the desire not to give a statement when he went to his place of business. It is simply an opinion of the witness and, of course, that invades the purview of your jurisdiction to determine the facts and any implications of the witness's opinion should have no bearing on your decision."

questioning nor was it an address to the jury by the prosecutor. It came, after a line of questioning by defense counsel, as a spontaneous utterance, an occurrence fairly similar to that initiating the motion for a mistrial which was denied in *State* v. *Gooch,* 186 Conn. 17, 25, 438 A.2d 867 (1982).

The defendant predicates his claim that the curative instructions failed to eliminate the prejudicial effect of the remark on *State* v. *Tinsley,* 180 Conn. 167, 429 A.2d 848 (1980). *Tinsley* involved a charge of sexual assault. The state presented evidence by the complainant that she had engaged in sexual intercourse with the defendant at various periods from February to August, 1976. Thereafter, recognizing that the requirements of the controlling statute (now General Statutes § 53a-69) rendered inadmissible the testimony concerning intercourse occurring between February and May of 1976, the trial court permitted the state to open its case and to recall the complainant who testified as to her sexual relations with the defendant on various dates from May to August of 1976. The trial court also permitted the state to file a substituted information limiting the sexual assault charge to the period between May and August, 1976. The jury was instructed to disregard any evidence of sexual intercourse occurring between February and May of 1976. On appeal, we reversed the judgment of conviction, holding that there was little likelihood that the prejudicial effect of the inadmissible evidence could be cured by the court's instruction. When considered from the standpoint of potential prejudice, Collet's remark, asserted to be injurious in the present case, pales into insignificance when compared with the highly prejudicial testimony given by the complainant in *Tinsley.*

The decision whether to grant a motion for a mistrial depends upon whether an event occurs of such a character as to preclude a fair trial, thus vitiating the entire proceeding. *State* v. *DeWitt,* 177 Conn. 637, 648, 419 A.2d 861 (1979). As to this aspect of a trial, the trial court possesses a wide degree of discretion. *State* v. *Gooch,* supra, 25. Further, curative instructions often remedy the prejudicial impact of inadmissible evidence. *State* v. *Tinsley,* supra, 170. In taking prompt corrective action in its instruction cautioning the jury to disregard the statement made by the witness, the trial court adequately prevented any potential use of the remark by the jury in their deliberations. We conclude that the trial court did not abuse its discretion in refusing to grant a mistrial.

The defendant next assigns as error the partial reading of previous testimony to the jury. After the jury had been charged and had begun their deliberations, the jury requested a reading of the testimony of the witnesses Wayne R. Hansen and Daniel Adams. As to Hansen's testimony, the trial court stopped the reading after inquiring of the jurors whether they wished a further reading. The jury answered "no." In regard to the reading of Adams' testimony the trial court again terminated the reading. The defendant objected to the failure of the court to order a reading of the testimony given by the witnesses on cross-examination, maintaining that such a procedure amounted to an abuse of judicial discretion. We disagree.

The first question read to the jury initiating the direct examination of Hansen was practically word for word that which was first asked of Adams, i.e., what each was doing and where each was on July 19. Thereafter each gave an account as to the vehicles

he saw, the identity of the vehicles and other pertinent information. The court halted the reading of Adams' testimony. As noted above, the jury indicated by word that they had heard enough of Hansen's testimony. Since the reading of Adams' testimony encompassed the same area of inquiry, the court could rightfully have concluded that a further reading of Adams' testimony would be superfluous. Further, while the defendant maintains that there is nothing in the record which supports the interruption of the reading of Adams' testimony, a fair reading of the transcript concerning the observations of the trial court in answer to the defendant's objection fortifies the justification for interrupting further reading.[4]

A trial court is not precluded from observing the conduct of jurors any more than it is prevented from observing the demeanor of witnesses and drawing inferences therefrom. See *Claffey* v. *Claffey*, 135 Conn. 374, 375–76, 64 A.2d 540 (1949); *State* v. *McLaughlin*, 126 Conn. 257, 264, 10 A.2d 758 (1939). Moreover, the jury did not request any further reading of Adams' testimony. "What portions of the record, if any, will be submitted to the jury for their consideration is a matter of sound judicial discretion." *State* v. *Cari*, 163 Conn. 174, 184, 303 A.2d 7 (1972). The court properly exercised that discretion.

There is no error.

In this opinion the other judges concurred.

---

[4] The Court: "That portion [of the testimony] where it came upon the accident, the court noted that the foreman indicated that that was the portion that they wished to hear and the court inquired of the jury and asked if they wished to hear more and the record indicates that they all indicated after he took a quick look down the row that that was the question and that was the testimony that they wished to hear. And the same with Mr. Adams' testimony."