# STATE OF CONNECTICUT *v.* MICHAEL WATSON
## (AC 16560)

O'Connell, C. J., and Spear and Daly, Js.

Argued October 30, 1997—officially released March 3, 1998

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Gerard P. Eisenman*, assistant state's attorney, for the appellee (state).

*Opinion*

DALY, J. In this action, the defendant, Michael Watson, appeals from the judgment of conviction, rendered after a jury trial, of two counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and, as found by the court, of being a persistent dangerous felony offender in violation of General Statutes § 53a-40 (a).

The defendant claims that the trial court improperly (1) permitted cross-examination of an alibi witness about her failure to report the alibi, (2) denied the defendant's motion for a mistrial, which he based on a reference by the prosecutor to his incarceration, (3) failed to inquire about a possible conflict of interest of defense counsel, (4) failed to find ineffective assistance of counsel, and (5) refused to permit the defendant to demonstrate his voice without being forced to testify. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of December 17, 1994, Elaine Jackson and Christina Ramirez were employed at a sandwich shop in Bridgeport. At approximately 11 p.m., the defendant entered the store and asked for a soda. Ramirez waited on the defendant. He inquired about a telephone, and Ramirez indicated that there was one on the street corner. The defendant then displayed a gun and demanded money from Ramirez, who was standing next to the cash register. Ramirez called to Jackson, who observed the gun pointed at Ramirez. Both employees were behind a floor-to-ceiling partition that had an opening through which customers received their orders. The defendant kept the gun pointed at Ramirez and repeatedly demanded money. The defendant took the money that Ramirez removed from the cash register. He then pointed the gun at Jackson and demanded that she open the door leading to the rear of the store. Apparently unable to exit the store from the rear, he ordered the two employees to lie face down on the floor and to count to ten before moving. He left by the front door, and the employees then notified the police and the store supervisor.

The employees described the defendant as a Hispanic male, five feet, five inches tall, who spoke broken English, had a gauze bandage over one eye and was wearing a red and black flannel jacket. Ramirez selected the defendant's photograph from a photographic array of eight males as being that of the perpetrator. The defendant was thereafter arrested.

At trial, the defendant presented an alibi defense that on the evening of December 17, 1994, he was attending a Christmas party at a club in Stratford with his fiancee, Lisa Cabral, who is now his wife. Cabral testified that she was with him from shortly before 9:30 p.m. until after 12:15 a.m. She testified that the defendant had no

accent or injury to his face. Two other witnesses testi-fied that the defendant was at the party and that he had no accent and no injury to or bandage on his eye.

## I

## A

The defendant first claims that the trial court improp-erly permitted the state to cross-examine Cabral con-cerning her failure to report the defendant's alibi to the proper authorities.

As noted previously, Cabral testified that the defen-dant was with her at the time of the robbery. The state inquired on cross-examination whether she had reported this to the police department or to the state's attorney's office. The defendant did not interpose an objection to those questions on relevancy grounds, but did object to one of the questions on the ground that it assumed that Cabral had an obligation to report the alibi. The court overruled the defendant's objection and the witness testified that she did not report the alibi to the police or to the state's attorney's office. The state then attempted to ask the witness whether, and how many times, she had come to court on this case. The defendant objected, contending that the question was irrelevant and suggested that the state give an offer of proof as to the relevance of that "line of questioning." The court overruled the objection and permitted the state to inquire as to the number of times Cabral had come to court on this case. The defendant also objected to the state's question as to how many days per week Cabral was in the downtown Bridgeport area. The defendant did not, however, object to the state's ques-tion as to whether Cabral was in the downtown area at her job five days per week from February through July, 1995. The state then asked: "Okay. You told us you never told the police department that you had an alibi for your husband? You never told anyone in the

state's attorney's office you had an alibi for your husband other than his attorney. Did you ever tell anyone in law enforcement that you had an alibi for your husband?" Cabral responded that she had not informed anyone in law enforcement of the alibi, but that she had told defense counsel. In his brief, the defendant argues that the state asked, "[o]ver multiple relevancy objections, if Cabral had ever reported the alibi to police or the state's attorney even though she worked down the street from the courthouse."

The defendant asserts that the court improperly admitted evidence of Cabral's silence and denied the request for a hearing to challenge the relevancy of the silence. The defendant requested a hearing to show that Cabral had refrained from speaking on the advice of defense counsel.

The standard of review on the propriety of the trial court's ruling on the relevance of questions by a state's attorney is well settled. *State* v. *Ghere*, 201 Conn. 289, 303, 513 A.2d 1226 (1986). "The scope of cross-examination in a criminal trial is a matter properly left to the sound discretion of the trial court . . . . Every reasonable presumption should be given in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. Reversal is required only where an injustice appears to have occurred." (Internal quotation marks omitted.) Id.

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . All that is required is that the evidence *tend* to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative. *State* v. *Cosby*, 44 Conn. App. 26,

31–32, 687 A.2d 895 (1996), cert. denied, 240 Conn. 910, 689 A.2d 474 (1997)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Torres*, 47 Conn. App. 149, 155–56, 702 A.2d 142 (1997), cert. denied, 243 Conn. 963, 707 A.2d 1267 (1998).

In *State* v. *Ghere*, supra, 201 Conn. 300, the defendant challenged "the propriety of the trial court's ruling allowing the state's attorney to impeach the defendant's alibi witnesses by exposing their failure to tell the police their story in support of the alibi." The Supreme Court addressed the narrow issue of "whether the failure of the witnesses to approach the police with their alibi story was relevant on the issue of credibility or, more specifically, the issue of fabrication." Id., 303–304. The court pointed out that "[a]lthough we do not believe that an alibi witness has a duty to report an alibi story to the police or, for that matter, to any other person, a witness in many instances naturally may be expected to convey such information, especially when the witness is friendly with the accused. Failure of the witness to do so would, under these circumstances, constitute grounds for impeachment." Id., 304.

In *State* v. *Bryant*, 202 Conn. 676, 703, 523 A.2d 451 (1987), the court referred to its decision in *Ghere* and stated that the alibi witnesses in *Ghere* " 'were shown to be friends or acquaintances of the defendant and it would only have been natural for them to exculpate the defendant of any wrongdoing by approaching the police' and, therefore, the trial court correctly allowed the state to impeach them by questioning their failure to relate their stories to the police." Id., quoting *State* v. *Ghere*, supra, 201 Conn. 305.

The defendant concedes that he has the burden of establishing that there has been an erroneous ruling that was harmful to him. *State* v. *Moody*, 214 Conn. 616, 629, 573 A.2d 716 (1990); 1 B. Holden & J. Daly,

Connecticut Evidence (2d Ed. 1988) § 60i, p. 385. The questions relating to Cabral's failure to report the alibi to the police were relevant to the issues of credibility and fabrication. "[I]f evidence adduced on cross-examination conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should be admitted." (Internal quotation marks omitted.) *State* v. *Ghere*, supra, 201 Conn. 303. Cabral's credibility was clearly in issue, and it was proper for the state's attorney to inquire into the circumstances of the alibi claim in an attempt to discredit it. See id. We hold that the trial court did not improperly permit, as relevant, questions concerning the witness' failure to report the alibi.

## B

The defendant also claims a violation of his right to a fair trial under the constitution of Connecticut, article first, § 8, and under the sixth and fourteenth amendments to the United States constitution. The defendant asserts that Cabral was advised by defense counsel not to report the alibi. The defendant claims that this fact rendered the evidence of her silence inadmissible under *State* v. *Bryant*, supra, 202 Conn. 676, because it raised issues relating to "the advice and strategy of counsel and attorney-client communications."

To support this claim on appeal, the defendant relies on our Supreme Court's statement in *State* v. *Bryant*, supra, 202 Conn. 676, that "[i]t may be prudential for the trial court to have a bench conference to ascertain 'whether [a] witness refrained from speaking under the advice of defense counsel, for in such a case examination on the issue of the witness' postconsultation silence would be improper and could well result in a mistrial.' " Id., 705–706, quoting *People* v. *Dawson*, 50 N.Y.2d 311, 323, 406 N.E.2d 771, 428 N.Y.S.2d 914 (1980). In *Bryant*, the defendant claimed that "the impeachment of his

alibi witnesses, because of their 'silence' up to trial, violated his sixth amendment right to present a defense." Id., 704. The court stated that "[i]t can fairly be said that an alibi witness, like any other witness, may be cross-examined with a view to demonstrating the improbability or even fabrication of his testimony. Where, however, such a witness is cast in the posture of having been silent as to claimed exculpatory testimony and is not given a real opportunity to explain that silence, some courts have suggested salutary responses in an effort to insure basic fairness. See, e.g., *Commonwealth* v. *Brown*, 11 Mass. App. 288, 296, 416 N.E.2d 218 (1981); *People* v. *Dawson*, supra [323]. Some courts have, therefore, required that the state lay a 'proper foundation' for this type of cross examination." *State* v. *Bryant*, supra, 704–705. A proper foundation may be laid by "demonstrating that the witness was aware of the nature of the charges pending against the defendant, had reason to recognize that he possessed exculpatory information, had a reasonable motive for acting to exonerate the defendant and, finally, was familiar with the means to make such information available to law enforcement authorities. . . . A proper foundation may better aid the trier of fact in determining whether the testimony of such a defense witness is an accurate reflection of the truth or is, instead, a recent fabrication." (Citations omitted; internal quotation marks omitted.) Id.

At trial, the defendant objected to the state's questions only on the ground of relevance. He did not object on the ground of a lack of foundation and he did not raise the present constitutional claim. He now seeks review of the claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The defendant can prevail on his unpreserved constitutional claim only if the following four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2)

the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. "The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." *State* v. *Newton*, 8 Conn. App. 528, 531, 513 A.2d 1261 (1986); *State* v. *Manfredi*, 17 Conn. App. 602, 621, 555 A.2d 436 (1989), aff'd, 213 Conn. 500, 569 A.2d 506, cert. denied, 498 U.S. 818, 111 S. Ct. 62, 112 L. Ed. 2d 37 (1990). Because the defendant's claim is of constitutional magnitude and a record sufficient to review the claim exists, we will review it. The claim fails, however, under the third prong of *Golding*.

On cross-examination, Cabral stated that she told defense counsel about the alibi. On redirect, counsel for the defendant asked Cabral why she did not go to the police. Cabral explained that she reported the alibi to defense counsel and that she believed he would do what was necessary with the information. Thus, Cabral was given an opportunity to explain her silence without having to divulge the substance of any conversation with defense counsel. We are unable to conclude that the state's questions deprived the defendant of a fair trial.

## II

The defendant next claims that the trial court improperly denied his motion for a mistrial. The defendant moved for a mistrial based on the following question asked of Cabral by the state: "[Y]ou are aware that when your husband was arrested he went to jail, aren't you?" The defendant objected to the reference to jail in the question and the court sustained the objection.

The defendant then moved for a mistrial on the ground that the prosecution's mention of the fact that the defendant was in jail violated a court order not to refer to the defendant's incarceration and constituted prosecutorial misconduct. The state claimed that the question was relevant. The trial court denied the motion for a mistrial, finding that the question did not indicate that the defendant was presently incarcerated. On appeal, the defendant also claims that the question impinged on the presumption of innocence.

"The decision as to whether to grant a motion for a mistrial . . . is one that requires the trial court to exercise its judicial discretion. . . . Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Internal quotation marks omitted.) *State* v. *Lasky*, 43 Conn. App. 619, 635, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997).

The trial court sustained the defendant's objection to the question and prohibited the state from alluding to the defendant's incarceration. Furthermore, the court specifically instructed the jury that it should consider only such evidence as was admitted. Applying the standard of review to the defendant's claims, we conclude that the trial court did not abuse its discretion in denying the defendant's motion for a mistrial.

The defendant's claim that the question impinged on the presumption of innocence is equally without merit. In *State* v. *Dolphin*, 195 Conn. 444, 452, 488 A.2d 812, cert. denied, 474 U.S. 833, 106 S. Ct. 103, 88 L. Ed. 2d

84 (1985), the state's attorney alluded to the defendant's incarceration during cross-examination of the defendant's principal witness, and the trial court denied defense counsel's motion for a mistrial, finding that the remark had been inadvertently made. The *Dolphin* court observed that "[w]hile a state's attorney has an obligation to present the state's strongest case, he is not licensed to use unethical or inflammatory tactics. . . . He must carefully avoid improprieties tending to prejudice any constitutional right of the accused. . . . Merely asking an improper question, however, does not necessarily mandate a mistrial. . . . The defendant must prove to the court that the remarks made by the prosecutor were so prejudicial that the defendant was deprived of the opportunity for a fair trial and the entire proceedings were tainted." (Citations omitted; internal quotation marks omitted.) Id., 452–53.

In *Dolphin*, the court upheld the trial court's decision not to grant the motion for mistrial, finding that the trial court promptly intervened to cure any prejudicial impact. The *Dolphin* court also found that there was nothing in the record to indicate that the questions in any way contributed to the verdict or that the court was incorrect in concluding that the prosecutor's questions did not warrant the extreme remedy of a mistrial. For the same reasons, we hold that the court in this case did not abuse its discretion in denying the defendant's motion for a mistrial.

### III

The defendant raises for the first time on appeal a claim that his right to effective assistance of counsel was violated when the trial court did not inquire into the possible conflict of interest of defense counsel. The defendant contends that if defense counsel questioned Cabral concerning his advice to her with respect to the alibi, he would have been, in effect, testifying as an

unsworn witness while at the same time acting as an advocate.[1]

"Practice Book § 4061 provides that '[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. . . .' This court follows the '[long-standing] rule that absent certain exceptional circumstances . . . claims not distinctly raised at trial will not be reviewed on appeal.' *Biggs* v. *Warden*, 26 Conn. App. 52, 57, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991). This rule encompasses even constitutional issues. *State* v. *Kelly*, 23 Conn. App. 160, 167, 580 A.2d 520, cert. denied, 216 Conn. 831, 583 A.2d 130 (1990), cert. denied, 499 U.S. 981, 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991). Our Supreme Court has held that '[s]uch exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial.' " *In re Michael A.*, 47 Conn. App. 105, 110, 703 A.2d 1146 (1997), quoting *In re Romance M.*, 229 Conn. 345, 352–53, 641 A.2d 378 (1994).

"The sixth amendment to the United States constitution as applied to the states through the fourteenth amendment, and article first, § 8, of the Connecticut

[1] Rule 3.7 (a) of the Rules of Professional Conduct provides in relevant part that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ." The defendant does not invoke this rule in arguing that his right to effective assistance of counsel was violated.

The defendant asserts that Cabral testified that she remained silent on the advice of defense counsel. Consequently, the defendant contends that counsel's credibility became an issue in the case and that counsel would have had to argue the correctness of this advice in defending against the state's inference that Cabral fabricated the alibi. Irrespective of the merits of this argument, the transcript reveals that Cabral testified that she did not report the alibi to the police or to the state's attorney's office because she believed that defense counsel would do what was necessary with the alibi information, and not that she refrained from reporting the alibi on the advice of defense counsel.

constitution, guarantee to a criminal defendant the right to effective assistance of counsel. *Powell* v. *Alabama*, 287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 158 (1932); *Festo* v. *Luckart*, 191 Conn. 622, 626, 469 A.2d 1181 (1983). Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest. *Wood* v. *Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 (1981). *Festo* v. *Luckart*, supra, 626–27. . . . Moreover, one of the principal safeguards of this right is the rule announced by [our Supreme Court] that [a trial] court must explore the possibility of conflict . . . when it *knows or reasonably should know of a conflict . . . . Festo* v. *Luckart*, supra, 629." (Emphasis in original; internal quotation marks omitted.) *State* v. *Martin*, 201 Conn. 74, 78–79, 513 A.2d 116 (1986).

"The two leading cases on the trial court's duty to inquire into possible conflicts of interest, *Holloway* v. *Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978), and *Cuyler* v. *Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), both involved multiple representation of criminal codefendants." *State* v. *Martin*, supra, 201 Conn. 79. As noted by the court in *Martin*, however, the fact that a conflict of interest arises "out of a situation other than multiple representation of criminal codefendants does not prevent the application of the principles set forth by the United States Supreme Court in *Holloway* v. *Arkansas*, supra [435 U.S. 475]." *State* v. *Martin*, supra, 81. In *Holloway*, "the trial court's failure to investigate defense counsel's timely allegation of a conflict of interest constituted a violation of the defendant's sixth amendment right." *State* v. *Martin*, supra, 79. "In *Cuyler* v. *Sullivan*, supra, [446 U.S.] 347, the court held that a trial court is under no obligation to initiate inquiry '[u]nless [it] knows or reasonably should know that a particular conflict exists. . . .' See *Festo* v. *Luckart*, supra, [191 Conn.] 628. . . . In *Cuyler*, the court also noted that defense counsel

has 'an ethical obligation to avoid conflicting represen-
tations' and must immediately advise the court when
a conflict of interest arises during the course of, as well
as prior to, trial. [*Cuyler* v. *Sullivan*, supra], 346." *State*
v. *Martin*, supra, 80. The court in *Martin* held, there-
fore, that "when counsel makes a timely assertion of a
conflict of interest, the trial court is under an affirmative
obligation to make an adequate inquiry on the record
to establish whether there is a conflict of interest."
Id., 83.

In this case, defense counsel was remiss in failing to
advise the court of any possible conflict of interest. As
previously noted, the trial court is under no obligation
to initiate an inquiry unless it knows or reasonably
should know that a particular conflict exists. Id.,79.
Here, the trial court reasonably could have presumed
that Cabral and defense counsel shared a common inter-
est in advancing the defendant's cause. Accordingly,
the defendant's claim is without merit.

## IV

The defendant next claims that his attorney's expla-
nation to the jury in closing argument about the advice
he gave to Cabral concerning the disclosure of the alibi
constituted a conflict of interest and resulted in ineffec-
tive assistance of counsel.[2]

---

[2] Counsel for the defendant made the following remarks during closing
argument: "Now, Lisa [Cabral] did not go to the police department and Lisa
did not go to the prosecutor's office. Lisa did the reasonable thing. Lisa
went to the attorney, the attorney's office. Lisa knows the only person who
has the best interest of his client in mind is the defense attorney and he
would make the best choice of what to do with the information, because
common sense tells you once an arrest takes place it's much more difficult
to undo an arrest after it's taken place and this arrest had taken place. Do
you think if somebody marched in and said, I'm the wife of the defendant
in this case and he wasn't there, do you think they would just have said,
Okay, we'll dismiss this case? They would say that is up to the jury to decide.
By the way, what is your name and sit down, we'll have a chat, but we're
not going to dismiss that case. We're not going to dismiss that case. That
goes against reason, because if that were the case I guess there is probably
a bridge in Brooklyn that might be for sale."

The trial court adequately instructed the jury to consider only the admissible evidence presented during the course of the trial. Furthermore, defense counsel's remarks to the jury do not appear to create a conflict of interest. "We have long held that the proper forum in which to address claims of ineffective representation of counsel is in the habeas forum or in a petition for a new trial, rather than on direct appeal." *State* v. *Jones*, 46 Conn. App. 640, 660, 700 A.2d 710, cert. denied, 243 Conn. 941, 704 A.2d 797 (1997), citing *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986).

Assuming, arguendo, that a conflict did exist, we deem it to be harmless in view of the other witnesses who also testified as to the whereabouts of the defendant on the evening of December 17, 1994.

V

The defendant's final claim is that he was deprived of a fair trial when the trial court ruled that he could not demonstrate his voice to the jury without appearing as a witness. The purpose of the proposed demonstration was to show that the defendant did not have an accent, as testified to by witnesses for the state. Jackson and Ramirez had testified that the gunman was a Hispanic male who spoke broken English.

The defendant contends that due process required that he should have been allowed to introduce his voice exemplar at the trial because the state would have been allowed to introduce it. A similar claim was raised in *United States* v. *Esdaille*, 769 F.2d 104 (2d Cir.), cert. denied, 474 U.S. 923, 106 S. Ct. 258, 88 L. Ed. 2d 264 (1985), in which the defendant contended that the trial court had "denied him due process in refusing to permit him to give an exemplar at trial without exposing himself to cross-examination . . . ." Id., 107. The defendant argued that "a voice exemplar displays an

identifying physical characteristic in a way that is not testimonial and that, as the government would have been allowed to require him to give such an exemplar on the theory that it is not testimonial, it was unfair not to permit him the same right." Id. The court in *Esdaille* concluded, however, that "the trial court did not abuse its discretion in refusing to allow the exemplar without [the defendant's] subjecting himself to cross-examination." Id. The court explained that "the matter of whether an act is testimonial or not bears on whether a person may be compelled, consistent with his Fifth Amendment right to avoid self-incrimination, to perform that act; but the fact that exhibition of a physical characteristic is not testimonial in nature, and hence may be compelled at some stage, does not require its admissibility into evidence." Id. Thus, the appeals court determined that the trial court had properly focused on whether the exemplar was reliable, not on whether it was testimonial. We find *Esdaille* persuasive and conclude that the defendant's due process rights were not violated in the manner in which he suggests.

The "demonstration of voice expression, delivery or style clearly lacks the reliability inherent in handwriting, clothing size and similar expositions. . . . In view of the lack of reliability of the proposed demonstration and the existence of readily available alternative means of presenting the evidence to the jury, the trial court did not abuse its discretion in denying the defendant the opportunity to speak before the jury other than as a sworn witness." *State* v. *Johnson*, 183 Conn. 156, 163, 438 A.2d 855 (1981). In denying the defendant's request, the trial court herein stated that many identifying attributes of voice can be altered and that therefore the demonstration would have been of no value. We hold that the trial court did not abuse its discretion in denying the defendant the opportunity to demonstrate his voice.

The judgment is affirmed.

In this opinion the other judges concurred.