## STATE OF CONNECTICUT *v.* DARIO GUZMAN
### (AC 21755)

Flynn, Bishop and Healey, Js.

Argued September 18—officially released November 26, 2002

*Lisa J. Steele,* special public defender, for the appellant (defendant).

*Paul J. Narducci,* assistant state's attorney, with whom, on the brief, was *Kevin T. Kane,* state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Dario Guzman, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of attempt to commit murder in violation of General Statutes §§ 53a-49[1] and 53a-54a,[2] assault in the first degree in violation of General Statutes § 53a-59[3] and carrying a pistol or revolver without a permit in violation of General Statutes § 29-35.[4] On appeal, the defendant claims that (1) he was deprived

[1] General Statutes § 53a-49 (a) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[3] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

[4] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

of a fair trial by prosecutorial misconduct and (2) the trial court abused its discretion when it denied the defendant's motion for a mistrial. We affirm the judgment of the trial court.

The following procedural history and facts, which the jury reasonably could have found, are pertinent to this appeal. In the early morning hours of January 16, 2000, a shooting occurred in the city of Groton in the vicinity of the Side Car Cafe.[5] Multiple gunshots were fired in two series of gunshots. Police officers were dispatched to the scene at approximately 1:40 a.m. When the officers arrived, they observed a large crowd of people in, and on both sides of, the street as well as in the parking lot for the Side Car Cafe. The officers did not locate either a victim or the shooters, but they did find what appeared to be blood on the sidewalk, bulletholes in a house and a tree, and twenty-one shell casings of three different calibers that had been fired from four different firearms. Additionally, the officers found a loaded Hi-Point .380 caliber semiautomatic pistol, a magazine loaded with .40 caliber bullets and two live .45 caliber bullets.

Prior to these events, earlier in the evening of January 15, 2000, the defendant met Earl Cornish, William Cornish, Felix Dominguez, Danny Cruz, and Israel Rodriguez at an apartment prior to attending a party for Ramon Gomez at the Side Car Cafe. With the exception of William Cornish, everyone at the apartment possessed a firearm: Earl Cornish, a Jennings .380 caliber semiautomatic pistol; Dominguez, a .40 caliber semiautomatic pistol; Cruz, a .45 caliber semiautomatic pistol; Rodriguez, a .22 caliber semiautomatic pistol; and the

---

[5] The parties have recited the name of the establishment as both two words ("Sidecar Cafe") and three ("Side Car Cafe") in their briefs. The court uses the name of the establishment (three words) as it appears on the substitute information dated January 16, 2001, and as it appears in the trial transcript.

defendant, the .380 caliber Hi-Point found by the police. While still at the apartment, the members of the group discussed problems they were having with Todd Thomas, who had been selling drugs in territory they regarded as their own domain for that purpose.

The defendant, William Cornish, Dominguez and Cruz traveled to the Side Car Cafe in a taxicab, while Rodriguez and Earl Cornish drove in a different car. When they arrived, the defendant, Dominguez and Cruz gave their weapons to William Cornish. While the others entered through the front door, William Cornish proceeded to the back door, because there was a bouncer and a metal detector at the front door. After the defendant let William Cornish in through the back door, he returned the weapons to the defendant, Dominguez and Cruz.[6] They then reunited with Earl Cornish and Rodriguez inside the bar.

Their rival, Thomas, arrived at the bar at about 10:30 p.m. with his associates, Walter Hyslop and Ronnie Rogers.[7] The three members of the Thomas group left the bar around the time that it was closing. Thomas began arguing with Cruz outside of the bar. The defendant and Rodriguez were standing nearby during this argument. During the course of the argument, Thomas became irate and lunged at Cruz, at which point Rogers and Hyslop tried to restrain their friend Thomas. Thomas broke free of their grasp. The defendant and Cruz ran around the corner from the bar and Thomas followed. Within seconds, gunshots were fired.

Thomas, Hyslop and Rogers ran to Hyslop's car, which was parked across the street from the Side Car

---

[6] We note that during his testimony, William Cornish identified the Hi-Point .380 caliber pistol recovered by the police as the weapon he returned to the defendant after entering the Side Car Cafe through the back door.

[7] The parties have spelled the latter name "Rodgers" and "Rogers." The court spells the name as set forth in the trial transcript.

Cafe. At about this time, Dominguez and Earl Cornish exited the bar and began shooting their firearms at Hyslop and Thomas, wounding Thomas. Hyslop and Thomas got into the car and drove away, leaving Rogers who was unable to get into the car.

At approximately 1:30 a.m., a police officer stopped a car driven by Hyslop when that car failed to stop at a stop sign. The passenger, Thomas, had been shot twice, once in his left lower leg, and once in his left foot. An ambulance was called to take Thomas to a hospital. In a statement given to police, Rodriguez stated that he saw Cruz and the defendant shooting at Thomas and his companions.

The defendant's first claim on appeal is that he was deprived of a fair trial when the court failed to sustain his objection to certain remarks made by the prosecutor during closing argument. We begin by setting forth our standard of review. "In analyzing the defendant's claim, we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Williams*, 204 Conn. 523, 539, 529 A.2d 653 (1987). "A statement within closing argument is blatantly egregious as to implicate the fundamental fairness of the trial itself where in light of all of the facts and circumstances . . . no curative instruction could reasonably be expected to remove [its] prejudicial impact." (Internal quotation marks omitted.) *State* v. *Wickes*, 72 Conn. App. 380, 385, 805 A.2d 142, cert. denied, 262 Conn. 914, 811 A.2d 1294 (2002).

We must also be mindful of the fact that the present case involves the conduct of the prosecutor in the context of a criminal trial. We have long recognized the "special role played by the state's attorney in a criminal trial. He is not only an officer of the court, like every other attorney, but is also a high public officer, representing the people of the State, who seek impartial

justice for the guilty as much as for the innocent. . . . By reason of his office, he usually exercises great influence upon jurors. His conduct and language in the trial of cases in which human life or liberty are at stake should be forceful, but fair, because he represents the public interest, which demands no victim and asks no conviction through the aid of passion, prejudice or resentment. If the accused be guilty, he should none the less be convicted only after a fair trial, conducted strictly according to the sound and well-established rules which the laws prescribe." (Internal quotation marks omitted.) Id., 386. This special prosecutorial role arises from the nature of the office, not from public opinions derived from how it is sometimes conducted.

There are six factors that we will consider when determining whether the defendant's conviction has been obtained by the denial of due process as a result of prosecutorial misconduct. Those factors are "the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981), cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982); the frequency of the misconduct; *State* v. *Couture*, 194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985) . . . the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Modica*, supra, 1181 . . . and the strength of the state's case. See [id.] . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 262–63, 780 A.2d 53 (2001).

The following additional facts are necessary to analyze the defendant's first claim. During the state's case-in-chief, the prosecutor attempted to elicit testimony

from Rodriguez as to what he had seen at the Side Car Cafe. Rodriguez' testimony was inconsistent with a statement he had given to police on January 20, 2000. The prosecutor, pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986), then introduced the statement Rodriguez had given to police. In that statement, Rodriguez identified the defendant as one of the persons who had shot at Thomas outside of the Side Car Cafe. On cross-examination, Rodriguez testified that he had signed the pretrial statement because the police had threatened to arrest him if he did not cooperate.

During closing argument, the prosecutor pointed out the inconsistencies between Rodriguez' testimony and the January 20, 2000 statement and argued reasons why the jury could believe Rodriguez' statement rather than his testimony.[8] During the defendant's closing argument, defense counsel argued that Rodriguez had given the statement to police to avoid being arrested.[9] The prosecutor, in rebuttal, attempted to address the defendant's arguments. Specifically, the prosecutor stated, "[Defense counsel] mentioned that Mr. Rodriguez was frightened [of] the police. You heard Mr. Rodriguez, he is in jail, he is in jail on I believe a narcotics charge. Think about it, if he gets back to jail and has to testify

---

[8] The prosecution pointed to the fact that the statement described facts which were at that time unknown to the police, including the existence of a .22 caliber handgun given to Cruz by Rodriguez, which was not recovered by the police until January 28, 2000, eight days after the statement was given.

[9] The relevant portion of the defendant's closing argument is as follows: "Israel Rodriguez signed a statement composed by the police to avoid getting arrested and charged in this case. He testified that he was frightened, that he was intimidated. It is one thing to accuse someone behind their back, it is another thing to come in and look that person in the eye and say I accuse you. Israel Rodriguez could not do that, but he was willing, behind [the defendant's] back, to tell the police what they wanted to hear. He did it to avoid being arrested. He did it because that little circle that the police officer drew kept getting smaller and smaller and smaller, and he was in the middle of that little circle."

against his friend, do you think he would be fearful for other people?" The defendant immediately objected on the ground that there was no evidence in support of the prosecutor's argument. The court, however, overruled the objection and stated, "It is for you ultimately to decide, and counsel can present arguments. And I remind you that argument is not testimony and is not evidence."

The defendant claims that the prosecutor's remark was improper for three reasons: (1) it was an expression of personal opinion regarding Rodriguez' credibility; (2) it was an appeal to the jury's emotions; and (3) it was a fact not supported by the evidence. We agree with the defendant that the prosecutor's remark was improper for the third reason, but disagree that this one remark so infected the defendant's trial as to amount to a denial of due process.

"Counsel may comment upon facts properly in evidence and upon *reasonable* inferences to be drawn from them. . . . Counsel may not, however, comment on or suggest an inference from facts not in evidence." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Banks*, 59 Conn. App. 112, 129, 755 A.2d 951, cert. denied, 254 Conn. 950, 762 A.2d 904 (2000). The prosecutor attempted to provide the jury with an alternate explanation for Rodriguez testifying contrary to his prior statement. This alternate explanation, though, was completely unsupported by the evidence. The prosecutor had the opportunity to question Rodriguez after the defendant raised the issue of Rodriguez' fear of police during cross-examination. The prosecutor, at that time, could have asked whether Rodriguez was afraid of retaliation from fellow jail inmates for testifying against the defendant. The jury could have evaluated Rodriguez' responses or any other evidence offered on the issue and then decided, based on the evidence, whether the prosecutor's argument

had any merit. Without such evidence, though, the jury was asked to engage in impermissible speculation. See *State* v. *Williams*, 16 Conn. App. 75, 79, 546 A.2d 943 (1988) ("[w]hile the jury may not speculate to reach a conclusion of guilt, they may draw reasonable, logical inferences from the facts proven to reach a verdict"). The prosecutor's argument was, therefore, improper. The prosecutor's single remark, however, does not amount to a denial of the defendant's due process right to a fair trial when this court considers the remark in light of the six factors previously set forth. See *State* v. *Whipper*, supra, 258 Conn. 262–63.

First, we consider the extent to which the remark was invited by defense counsel's conduct or argument. We acknowledge that the remark was not invited by defense counsel's argument that the witness signed the *Whelan* statement because of fear of police. The defense counsel's argument was supported by the testimony of Rodriguez to that effect. Thus, we cannot conclude that the remarks were in any way invited by defense counsel. This one factor, though, is not dispositive. See, e.g., *State* v. *Johnson*, 71 Conn. App. 272, 286, 801 A.2d 890 (affirming conviction although misconduct not invited by defense), cert. denied, 261 Conn. 939, 808 A.2d 1133 (2002).

The second factor that we consider is the severity of the misconduct. We do not believe that the prosecutor's remark was such severe misconduct as to warrant a new trial. The defendant argues, at most, that the prosecutor implied that Rodriguez was afraid of the defendant. We note that the prosecutor, despite that the defendant's objection was overruled, did not pursue the line of argument further. Such a remark is severe when it is "strongly critical and condemnatory . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Thompson*, 69 Conn. App. 299, 312, 797 A.2d 539, cert. granted on other grounds, 260 Conn. 936, 802 A.2d 90

(2002). This isolated remark does not equate with the kind of strongly critical or condemnatory language which has resulted in reversals of convictions. See, e.g., id., 307 (arguing that certain witnesses had " 'reserved a place in hell for themselves' "); *State* v. *Mills*, 57 Conn. App. 202, 207, 748 A.2d 318 (arguing that term " 'back-stabber' " was coined because of people such as defendant), cert. denied, 253 Conn. 914, 915, 754 A.2d 163 (2000); *State* v. *Williams*, 41 Conn. App. 180, 184, 674 A.2d 1372 (expressing opinion that " 'all of these officers are extremely honest' "), cert. denied, 237 Conn. 925, 677 A.2d 950 (1996).

Third, we examine the frequency of the misconduct. The remark was one isolated instance in the course of the entire closing argument and rebuttal by the prosecutor. There is no pattern of prosecutorial misconduct infecting the entire proceeding.

Fourth, we consider whether the remark was central to the critical issues in the case. Rodriguez was the only witness to have given a statement that he witnessed the defendant shooting at Thomas. Rodriguez' trial testimony, though, conflicted with his pretrial statement. The prosecutor's remark addressed the issue of Rodriguez' credibility. The credibility of Rodriguez undoubtedly was an important issue in the case. We cannot conclude, however, that Rodriguez' credibility was the sine qua non upon which any conviction had to rest. As we will discuss more fully, the other evidence against the defendant was sufficient to support a conviction even if the jury chose to disregard the statement Rodriguez gave to police.

Fifth, the strength of the curative measures taken by the court was sufficient to prevent any use of the prosecutor's remark by the jury in reaching its decision. We note that, although the court overruled the defendant's objection to the remark, the court immediately

reminded the jury that the arguments of counsel are not evidence and, later, instructed the jury that the arguments and statements of the lawyers were not evidence and should not be considered in deciding the facts.[10]

Finally, we note that the state had a strong case against the defendant even in the absence of the disputed statement given by Rodriguez. The Hi-Point .380 caliber pistol, which the police found at the scene of the shooting, was identified by several witnesses as being the pistol that the defendant brought to the Side Car Cafe that night. Many of the witnesses testified that they saw the defendant and Cruz follow the victim, Thomas, around a corner immediately before the first series of shots were fired. The defendant even told his friends that he shot all his bullets during the incident and dropped his pistol at the Side Car Cafe. A firearms examiner with the state police forensic science laboratory positively identified eight of the .380 caliber shell casings found at the scene as having been fired from the Hi-Point pistol the defendant was carrying.

We conclude, therefore, that in light of all the circumstances, the remark made by the prosecutor in closing argument was not so "blatantly egregious as to implicate the fundamental fairness of the trial itself . . . ." (Internal quotation marks omitted.) *State* v. *Wickes*, supra, 72 Conn. App. 385.

---

[10] The court, responding to the defendant's objection, stated: "I will overrule the objection. It is for you ultimately to decide, and counsel can present arguments. And I remind you that argument is not testimony and is not evidence."

In its charge to the jury, the court stated in relevant part: "Certain things are not evidence . . . and you may not consider them in deciding what are the facts. These include, one, the arguments and statements by the lawyers. The lawyers are not witnesses. What they have said in closing argument and at other times is intended to help you to interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory must control."

We next turn to the defendant's second and final claim. This claim arises out of the testimony of a police officer who had twenty-one years of experience, from which the jury could infer that the defendant had a criminal history. The defendant claims that the court abused its discretion when it denied his motion for a mistrial. We disagree.

The standard of review for this claim is different from that applicable to the defendant's first claim. "The decision as to whether to grant a motion for a mistrial . . . is one that requires the trial court to exercise its judicial discretion. . . . Our review of the trial court's exercise of its discretion is limited to questions of whether the court correctly applied the law and could reasonably have concluded as it did. . . . Every reasonable presumption will be given in favor of the trial court's ruling. . . . It is only when an abuse of discretion is manifest or where an injustice appears to have been done that a reversal will result from the trial court's exercise of discretion." (Internal quotation marks omitted.) *State* v. *Watson*, 47 Conn. App. 794, 803, 707 A.2d 1278 (1998), aff'd, 251 Conn. 220, 740 A.2d 832 (1999).

The following additional facts are necessary for an examination of this claim. The state called David Bailey, a member of the Groton police department, as a witness. The prosecutor sought to introduce the defendant's date of birth, presumably as a preliminary question to establish the defendant's identity as a person without a valid pistol permit. When the prosecutor asked Bailey from whom he had received information concerning the defendant's date of birth, Bailey responded, "I believe once we identified him as being one of the people we were looking for through criminal history checks initially." The defendant objected immediately, and the court ordered the answer stricken and instructed the jury to disregard Bailey's answer. When the defendant

again objected before Bailey answered the next question, the court gave the jury the following instruction: "I will tell the jury during my instructions that because a person is arrested and charged with a crime, that is not to be held against the individual. That is not evidence. And what counsel's concern obviously is is that has absolutely nothing to do with your decision made here as to the guilt or nonguilt of [the defendant]. . . . So, you are not to consider in any way . . . the fact that [the defendant] was arrested and charged with these crimes [which] has absolutely no evidentiary value whatsoever."

The defendant subsequently moved for a mistrial on the basis of Bailey's testimony. "While the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) *State* v. *Day*, 233 Conn. 813, 836, 661 A.2d 539 (1995). The court acted properly when it immediately responded to the answer given by Bailey with the curative instruction quoted. We conclude that the court did not abuse its discretion in denying the defendant's motion for a mistrial.

The present case is analogous to *State* v. *Nowakowski*, 188 Conn. 620, 452 A.2d 938 (1982). In *Nowakowski*, the police officer's response to a question was clearly inappropriate,[11] and, yet, our Supreme Court held that the trial court did not abuse its discretion in denying

[11] The police officer in *Nowakowski*, when questioned regarding his interactions with the defendant in that case, gave the unsolicited response that "[i]f he was so innocent he would have given me a statement . . . ." (Internal quotation marks omitted.) *State* v. *Nowakowski*, supra, 188 Conn. 621–22.

the motion for a mistrial. Id., 624. The *Nowakowski* court concluded that "[i]n taking prompt corrective action in its instruction cautioning the jury to disregard the statement made by the witness, the trial court adequately prevented any potential use of the remark by the jury in their deliberations." Id. The actions of the court in the present case were no less prompt or thorough.

The defendant argues that we should consider other events that happened later in the course of the trial when determining whether the court abused its discretion in denying his motion for a mistrial. We disagree. If the defendant had reason to believe that the new events cumulatively viewed together with the prior police testimony had deprived him of a fair trial, he had a duty to make a new motion for a mistrial. We note that the defendant never renewed his motion for a mistrial after it was denied. Furthermore, the court could not have abused its discretion in denying the defendant's motion by failing to consider events which had not occurred at the time of the making of the motion for mistrial.

The judgment is affirmed.

In this opinion the other judges concurred.